[No. 14350-8-I.   Division One.   August 25, 1986.]

JOE D. BARNETT, ET AL, *Appellants,* v. BUCHAN BAKING COMPANY, ET AL, *Respondents.*

---

[5]Thamert has not assigned error to the denial of his motion to sever.

*Robert C. Van Siclen, Smythe, Van Siclen & Sosa,* and *William B. Christie,* for appellants.

*Jerry W. Spoonemore* and *Montgomery, Purdue, Blank-inship & Austin,* for respondents.

RINGOLD, A.C.J.—Joe and Joyce Barnett operated a restaurant in a partnership with Howard and Sandra Jones. The partnership leased a building from Buchan Baking Company. The dispute on appeal presents the issue of whether Barnett or Jones properly exercised an option contained in the lease to purchase the building. After a bench trial, the trial court rendered judgment for Buchan, concluding neither Barnett nor Jones validly exercised the option prior to its termination. Both Barnett and Jones appeal.

On August 9, 1976, Buchan leased a restaurant building for a term of 25 years to Barnett and Jones, "dba Western Sizzlin Steak House, as lessee." The lease contained an option to purchase, which was exercisable by the partnership anytime between the sixth month of occupancy and the end of the fifth year of the lease, May 31, 1982. The parties also agreed to a provision restricting assignment of the lessee's interest without Buchan's consent.

On February 7, 1979, Barnett sold his interest in the business and assigned his rights in the lease to Jones. Their agreement provided that Barnett would have the exclusive right to exercise the purchase option during the last 4 months of its existence. This assignment was made without Buchan's knowledge or consent.

In June 1979, Jones sold the restaurant business and assigned the lease to Timco–Erickson, reserving a right to exercise the purchase option in the last 6 months of the option's existence. Buchan consented to this assignment, believing that both Jones and Barnett were to execute the assignment, but Buchan was unaware of the terms of the sale agreement.

On July 8, 1981, Timco–Erickson secured an extension of the purchase option from Buchan to May 31, 1983. Jones expressly consented to this extension. Barnett was notified of the extension, but neither consented nor objected to it.

Barnett attempted to unilaterally exercise the option on March 1, 1982. Buchan was willing and able to comply, but declined to do so without the acquiescence of Jones and Timco–Erickson. Both of them, however, objected in writing.

On April 9, 1982, Barnett filed suit against Buchan for specific performance. Jones defended on behalf of Buchan and counterclaimed against Barnett for tortious interference with business relations.

Timco–Erickson subsequently advised all parties that it would not exercise any option rights. Jones then notified Buchan and Barnett that Jones had the sole right to exercise the option, and he attempted to do so on December 8, 1982. Barnett objected, claiming he had already validly exercised the option. Buchan refused to close a sale without the consent of both Barnett and Jones.

Jones sent Buchan a letter on April 19, 1983, asking that Buchan sell the building to Jones and suggesting that Jones "could probably give Buchan satisfactory indemnification for any loss resulting from such action." On April 29, 1983, 1 month before the purchase option was to expire, Buchan sent Jones and Barnett a letter advising them that if no joint exercise of the option occurred before May 31, 1983, the option would expire. Buchan then filed pleadings and took over its own defense.

The trial court denied motions for summary judgment, and the case went to trial in January 1984. The trial court concluded that Barnett was estopped to deny the validity of the extension of the purchase option and therefore that his attempt to exercise the option was ineffective. The trial court also concluded that at no time prior to the expiration of the option was it validly exercised, or an acceptable release or hold harmless agreement tendered to Buchan, by either Jones or Barnett. The trial court declared the option expired and granted judgment to Buchan, which was also awarded attorney fees. Jones' counterclaim was dismissed, and the trial court made no reference to it in its findings and conclusions.

Buchan argues that the trial court's findings of fact are supported by substantial evidence and should not be overturned on appeal. Since *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959), it has been the rule in this State that an appellate court may only review findings of fact by the trial court to determine if they are supported by substantial evidence. "It is, however, the function of any appellate court to determine questions of law. If what is in fact a conclusion of law is wrongly denominated a finding of fact, it is, nevertheless, subject to review." *Local 1296, Int'l Ass'n of Firefighters v. Kennewick*, 86 Wn.2d 156, 161–62, 542 P.2d 1252 (1975).

■ There are no disputed facts on appeal. The only challenges made to the findings of the trial court concern the legal effect of actions taken by the parties. These are questions of law properly reviewable by this court. *See Kennewick.*

### Assignment of Lease Option

Buchan argues that under the lease any assignment had to have Buchan's consent or it was invalid. It is a general rule that parties to a lease may agree "that no assignment of the lease or any part thereof should be valid without the written consent of the lessor, and an assignment in violation of such covenant would confer no rights on the assignee." *Behrens v. Cloudy*, 50 Wash. 400, 401, 97 P. 450 (1908).[1] This rule extends to options to sell. *Behrens*, at 401.

■ To determine whether Barnett's transfer of interest to Jones violates the stipulation against assignment this court must look to the assignment provision in the lease. *See Burleson v. Blankenship*, 193 Wash. 547, 549, 76 P.2d 614 (1938) (insurance contract). Provisions against assignment "are to be strictly—even literally—construed." *Burle-*

---

[1]The rule also is that the restraint on assignment of the lease may be unreasonable and unenforceable unless the lessor "can show that enforcement of the restraint is necessary to protect his security." *See Terry v. Born*, 24 Wn. App. 652, 655, 604 P.2d 504 (1979).

*son,* at 549. Paragraph 11 of the lease provided:

> *Assignment.* Lessee shall not without the written consent of the Lessor, let or sublet the whole or any part thereof, or assign this Lease or any part thereof without the written consent of the Lessor which consent will not unreasonably be withheld. This lease shall not be assignable by operation of law. If Lessee is a corporation, then any transfer of the Lease from Lessee by merger, consolidation, or liquidation and any change in ownership, or power to vote, the majority of its outstanding voting stock shall constitute an assignment for the purpose of this paragraph. If consent is once given by the Lessor to the assignment of this Lease, or any interest therein, Lessor shall not be barred from afterwards refusing to consent to any further assignment.

Lessee is defined in the lease as both Barnett and Jones doing business as Western Sizzlin Steak House. The language referring to corporations is inapplicable, because Western Sizzlin Steak House was a partnership.

██ When construing similar language as used here, the Supreme Court stated:

> "The covenant is that the lessees shall not assign, and only one of them has done so. It does not provide that neither of the lessees shall assign, nor that one may not assign to the other; and construing this covenant strictly against the lessor, as the law requires us to do, it should be presumed to mean that the lease shall not be assigned by both. As the assignment was by one only of the lessees, there was no breach of the covenant, and therefore there was no forfeiture."

*Burleson,* at 551 (quoting *Spangler v. Spangler,* 11 Cal. App. 321, 104 P. 995, 996 (1909)). The *Burleson* court approved the principle that assignments between partners are valid without the consent of the lessor, unless the lease expressly requires such consent. *Burleson,* at 550–51. The lease here does not; therefore, the assignment by Barnett to Jones was valid. *See Burleson.*

### ESTOPPEL

Barnett received a copy of a letter from Buchan extending the option; the relevant portion states:

> We understand that said Lease has been assigned to T.M. Erickson with Jones et al retaining some secondary rights for option to purchase provision.
>
> By this letter Buchan agrees to extend the term for option to purchase outlined in paragraph 28 of said Lease from present expiration date of May 31, 1982 to May 31, 1983. . . .

After receiving this letter, Barnett neither consented nor objected to the extension. Jones and Buchan argue that the trial court properly found that this silence estopped Barnett from claiming the extension of the purchase option did not affect Barnett's 4-month period in which he could exercise the option.

In *Huff v. Northern Pac. Ry.*, 38 Wn.2d 103, 114, 228 P.2d 121 (1951), the Supreme Court held:

> Where a person with actual or constructive knowledge of facts induces another, by his words or conduct, to believe that he acquiesces in or ratifies a transaction, or that he will offer no opposition thereto, and that other, in reliance on such belief, alters his position, such person is estopped from repudiating the transaction to the other's prejudice.

Such an estoppel may be based on silence. *Huff*, at 115. "Where a party knows what is occurring and would be expected to speak, if he wished to protect his interest, his acquiescence manifests his tacit consent." *Bunn v. Walch*, 54 Wn.2d 457, 463, 342 P.2d 211 (1959). Thus this court must decide whether the letter imposed upon Barnett a duty to speak.

Barnett argues that the letter does not indicate anything adverse to his interests. It refers to an extension of Timco–Erickson's option rights and alludes to option rights retained by Jones and Barnett. In *Huff*, the court required that before estoppel through silence may be enforced against a person, the person's rights must with "clarity and certainty" appear implicated. *Huff*, at 115–16. Here the letter did not alert Barnett that his option rights would be altered. This is not sufficient for estoppel by silence to apply. *See Huff*, at 115–16.

## Extension of Option

Having concluded that Barnett is not estopped to argue his claim, the next question is what effect the extension had upon Barnett's right to exercise the purchase option. Barnett argues that without consideration the extension could not affect his rights. Jones responds that Barnett merely held a remainder interest, which vested only if Jones decided not to exercise the option.

The assignment agreement between Barnett and Jones provided in part:

> [T]he option expires before the end of the fifth year of the lease. In the event that Jones or his successors or assignees shall not have exercised the option more than 4 months prior to its expiration date, then Barnett shall have the sole right to exercise the option during said 4 month period.

When construing a contract, the courts should give effect to the intent of the parties. *In re Estates of Wahl,* 99 Wn.2d 828, 830–31, 664 P.2d 1250 (1983). What controls in the contract is the intent of the parties at the time of its execution. *Washington Hydroculture, Inc. v. Payne,* 96 Wn.2d 322, 328, 635 P.2d 138 (1981). The intent of the parties in an unambiguous contract is to be determined from the language of the contract itself. *Lynch v. Carroll,* 24 Wn. App. 667, 670, 604 P.2d 510 (1979). Interpretation of an unambiguous contract is a question of law. *In re Estates of Wahl,* at 831.

When executed, the agreement between Barnett and Jones was unambiguous. Barnett held the right to exercise the purchase option during the 4 months prior to the end of the fifth year of the lease. That was a period from February 1, 1982, until May 31, 1982. Barnett attempted to exercise the option on March 1, 1982.

An option to purchase is a contract whereby the owner of the property, for valuable consideration, in this instance the lease, sells to the optionee the right to buy the property within the time, for the price, and upon the terms and conditions specified in the lease. *Spokane Sch. Dist. 81 v. Parzybok,* 96 Wn.2d 95, 96, 633 P.2d 1324 (1981). When

supported by consideration, as in this case, the optionor may not withdraw the option or make its exercise more difficult during the agreed term of the option. *McFerran v. Heroux,* 44 Wn.2d 631, 638, 269 P.2d 815 (1954).

█ A modification of an existing contract must be supported by new consideration independent of the consideration involved in the original agreement. *Rosellini v. Banchero,* 83 Wn.2d 268, 273, 517 P.2d 955 (1974). The 1-year extension of the option was executed between Buchan and Timco–Erickson for valuable consideration, and Jones consented. Barnett, however, was given no new consideration to modify the time period for which he held the exclusive right to exercise the purchase option. Thus, the extension had no effect on his rights. When Barnett attempted to exercise the option on March 1, 1982, it became a purchase and sale contract binding on Buchan. *See Valley Garage, Inc. v. Nyseth,* 4 Wn. App. 316, 318, 481 P.2d 17 (1971).[2]

### TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

The trial court made no findings or conclusions concerning the tort action other than dismissing the cross complaint. Jones claims Barnett's lawsuit interfered with Jones' contract with Buchan and resulted in Jones' loss of the building.

█ The Supreme Court in *Cherberg v. Peoples Nat'l Bank,* 88 Wn.2d 595, 602, 564 P.2d 1137 (1977) set out the elements of tortious interference with business relations as:

(1) The existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination thereof; (4) resultant damage.

The court also held "that, in some instances, intentional interference with a business expectancy may be 'privileged'

---

[2]Having concluded that Barnett validly exercised the option, we need not consider Jones' contention that the expiration date of an option should be tolled pending the resolution of litigation determining who has the right to exercise an option.

and therefore not a basis for tort recovery." *Cherberg,* at 604. The court stated:

> A privilege to interfere may be established if the interferor's conduct is deemed justifiable, considering such factors as: the nature of the interferor's conduct; the character of the expectancy with which the conduct interferes; the relationship between the various parties; the interest sought to be advanced by the interferor; and the social desirability of protecting the expectancy or the interferor's freedom of action.

*Cherberg,* at 604–05.

Barnett's claims, which could only be exercised by interfering with the Jones–Buchan relationship, are vindicated on appeal. Applying the factors enunciated in *Cherberg,* Barnett was obviously justified in his interference.

## ATTORNEY FEES

The lease between Buchan and Barnett and Jones provides for attorney fees to be awarded to the prevailing party in any action arising out of the lease. Barnett is therefore entitled to attorney fees at trial and on appeal. He did not, however, comply with the provisions of RAP 18.1(b), (c) and (d) requiring that argument be devoted to attorney fees and that an affidavit detailing the services performed be supplied to this court. Failure to comply with the rules precludes an award of attorney fees on appeal. *Simonson v. Fendell,* 101 Wn.2d 88, 93, 675 P.2d 1218 (1984).

Buchan complied with the provisions of RAP 18.1. Buchan argues that it is entitled to attorney fees because it was forced into litigation by virtue of the inability of Jones and Barnett to settle their differences.

> It is also a well settled rule in this state that where "the natural and proximate consequences" of a wrongful act by one person involve another in litigation with third persons, the wronged party may recover reasonable expenses of the litigation, including attorney's fees.

*North Pac. Plywood, Inc. v. Access Road Builders, Inc.,* 29 Wn. App. 228, 236, 628 P.2d 482, *review denied,* 96 Wn.2d 1002 (1981).

By disputing Barnett's lawful exercise of the option, Jones involved Barnett and Buchan in litigation. Buchan is entitled to an award for attorney fees and costs from Jones. Under the lease, Barnett is entitled to an award of attorney fees incurred at trial from Buchan. Buchan would then be entitled to be reimbursed by Jones for this cost. *See North Pacific Plywood, Inc.*, at 236.

Barnett's request for specific performance is granted. We remand to the trial court for an accounting of rents that should have been paid Barnett had the contract for sale been timely executed. Buchan is entitled to an offset for reasonable expenses, including a management fee. The desirable result is that which will place the parties in, as nearly as possible, the same position they would have occupied had the conveyance been made in a timely fashion. *Northwest Television Club, Inc. v. Gross Seattle, Inc.*, 96 Wn.2d 973, 985, 640 P.2d 710 (1981).

The trial court's judgment is reversed. The trial court is also directed to calculate the reasonable attorney fees incurred both at trial and on appeal and make an award in accordance with this opinion.

COLEMAN and WEBSTER, JJ., concur.

Reconsideration denied September 25, 1986.

Review granted by Supreme Court January 6, 1987.