[No. 8264-4-III.   Division Three.   November 10, 1988.]

KENNETH W. PEARSON, ET AL, *Appellants,* v. ERWIN SCHUBACH, ET AL, *Respondents.*

*Victor Felice* and *Felice & Clayton*, for appellants.

*Jeffrey Supinger, Witherspoon, Kelley, Davenport & Toole, Robert McKanna, Erika Balazs,* and *Lukins & Annis,* for respondents.

MUNSON, A.C.J.—In April 1982, Erwin Schubach leased property located at E. 11619 Sprague Avenue, Spokane, to Mr. and Mrs. Kenneth Pearson and Mr. and Mrs. Lyle Johnson (collectively referred to as Mr. Pearson). The lease was for 1 year, commencing April 5, 1982, with automatic annual extensions spanning 5 years. The lease contained the following provision:

26. First Right of Refusal. In the event Lessor is in receipt of a bona fide offer to purchase the demised property, which Lessor is willing to accept for purchase and sale of demised premises, Lessor shall furnish a copy of fully executed offer to purchase to Lessees within twenty–four (24) hours of receipt thereof and Lessees herein may exercise their first right to refusal not to

exceed forty–eight (48) hours from the date of receipt of copy thereof.

On October 12, 1982, the Superior Court ordered the sale of Mr. Schubach's real property to satisfy a judgment rendered against him in State v. Empire Mobile Homes, Inc. (Spokane County Superior Court cause 79–2–07168–9, a consumer protection violation based on RCW 19.86). Kiemle & Hagood Company was appointed by the court as marketing agent for the sale; Paul Clausen was the closing attorney. According to an independent appraisal, the value of the property was $1,015,000.

Subsequently, Henry Grinalds, d/b/a G.M.P. Properties (G.M.P.), made an offer to purchase the property. It is undisputed all parties were aware of Mr. Pearson's right of first refusal. The offer to purchase was structured in such a fashion that the leased portion was separate from the unleased and both had different terms and square footage prices. However, the sale of the leased property was contingent upon the sale of the unleased portion.

By letter dated August 22, 1983, notice of the offer to purchase was personally served that day on Mrs. Pearson by a representative of the Attorney General's office. Mr. Pearson was present in the home; Mrs. Pearson gave him the letter. However, the earnest money agreement accompanying the letter was signed by an agent of Kiemle & Hagood, rather than Mr. Grinalds, on behalf of G.M.P. The agreement provided the sale was contingent upon the undisclosed purchaser (G.M.P.) "negotiating a purchase upon terms and conditions satisfactory to Purchaser on all of the Sellers contiguous property, of which the above described property is a part, within 5 days of Seller's acceptance."

On August 25, 1983, 48 hours after the letter was delivered to the Pearsons, a second supplemental order of restitution was signed in State v. Empire Mobile Homes, Inc., wherein the court approved G.M.P.'s $800,000 offer and

ordered the sale of all parcels, including the leased property to G.M.P. The court also found notice of the proposed offer had been served on the Pearsons, and the right of first refusal had not been exercised within the required 48 hours. The sale was closed September 16, 1983. Shortly thereafter G.M.P. assumed possession, giving notice to Mr. Pearson of its purchase. G.M.P. also began construction of a building upon the unleased portion at a cost of approximately $180,000 and purchased other contiguous parcels. Mr. Pearson made rental payments to G.M.P.; no action was taken to exercise his right of first refusal until the filing of the present lawsuit on December 6, 1984. Two years later, Mr. Pearson chose not to renew his lease and left the premises in September 1986.

Numerous issues have been raised on appeal. Because one issue is dispositive, we do not address the others. The issue before us is whether Mr. Schubach was a "willing" seller, a condition precedent to the ripening of the right of first refusal.

That issue is answered by the transcript of the proceeding of August 25, 1983.[1] That record indicates the court ordered Mr. Schubach to sign the earnest money agreement before he left the courtroom.[2] Failure to obey the court's order would presumably have led to a contempt proceeding. *Wright v. Suydam,* 79 Wash. 550, 140 P. 578 (1914). It is also evident Mr. Schubach questioned the sale price ($800,000) inasmuch as the appraised value was in excess of $1 million. However, the Attorney General's office also agreed not to seek a deficiency judgment and, in that respect, there was an accommodation to Mr. Schubach.

---

[1]While Mr. Pearson challenges the court's consideration of that transcript on this appeal, he did not raise that issue with the trial court and hence will not be heard to challenge it here.

[2]Mr. Pearson contends Mr. Schubach's signature on the earnest money agreement presents a question of fact because of the language in the acknowledgment: "free and voluntary act." While the notary does use those terms pursuant to the statutory language of RCW 64.08.050, they are only prima facie evidence of the voluntariness of the act; it is not a conclusive presumption.

Finally, the court was authorized under RCW 6.28.010[3] to complete the transfer without Mr. Schubach's signature.

In *Draper v. Gochman,* 400 S.W.2d 545 (Tex. 1966), a lease specified that if lessor desired to sell or dispose of his interest, the lessee would have the right of first refusal to purchase. Subsequently, the lessor borrowed money and executed a deed of trust to secure the debt. When the lessor defaulted, his interest was forfeited under the deed of trust. The court held that a deed of trust sale was involuntary and the lease provided a right of first refusal only when the lessor's interest was transferred voluntarily. *Draper,* at 548.

In *Henderson v. Millis,* 373 N.W.2d 497 (Iowa 1985), the court considered whether the right of first refusal was triggered by a sheriff's sale of the property. Relying on *Kowalsky v. Familia,* 71 Misc. 2d 287, 336 N.Y.S.2d 37 (1972), the court considered the language of the agreement to be the determining factor. Construing the words "in the event that grantors 'elect to sell'", *Henderson,* at 503, the court determined they were terms of choice. Because the foreclosure was directed by court order, the grantors had not elected to sell the property. Thus, the right of first refusal was not triggered. *See also Kowalsky* (where property was condemned by county, right of first refusal not operative); *In re Estate of Rigby,* 62 Wyo. 401, 167 P.2d 964 (1946) (probate order directing sale of estate property not a voluntary sale giving rise to first refusal rights). *Contra, Cities Serv. Oil Co. v. Estes,* 208 Va. 44, 155 S.E.2d 59, 63 (1967) (right of first refusal does operate where property sold at judicial sale); Annot., 17 A.L.R.3d 962 (1968).

▮ The sale ordered by State v. Empire Mobile Homes, Inc., was not challenged by any of the parties to that action

---

[3]RCW 6.28.010 reads: "Court may appoint, when. The several superior courts may, whenever it is necessary, appoint a commissioner to convey real estate:

"(1) When by a judgment in an action, a party is ordered to convey real property to another, or any interest therein.

"(2) When real property, or any interest therein, has been sold under a special order of the court and the purchase money paid therefor."

nor did Mr. Pearson seek intervention to assert his alleged right of first refusal. Rather, he paid his rent to G.M.P., observed a building being constructed on the unleased portion, and responded to an unlawful detainer action by G.M.P. Thus, from September 1983 until December 1984 when he filed his lawsuit, Mr. Pearson failed to take any action. He also failed to renew his lease in September 1986. Based on his failure to timely assert his claim, we conclude Mr. Pearson is estopped from pursuing it. *Huff v. Northern Pac. Ry.*, 38 Wn.2d 103, 114, 228 P.2d 121 (1951); *Barnett v. Buchan Baking Co.*, 45 Wn. App. 152, 158, 724 P.2d 1077 (1986), *aff'd*, 108 Wn.2d 405, 738 P.2d 1056 (1987); *Myers v. Lovetinsky*, 189 N.W.2d 571 (Iowa 1971).

### ATTORNEY FEES

On January 8, 1987, the trial court awarded fees to Mr. Schubach and G.M.P. based upon the lease, as modified by RCW 4.84.330. On February 23, an order was entered specifying the fees to be paid as follows:

| | |
|---|---|
| Mr. Schubach | $2,399.11 (Supinger) |
| | 1,395.00 (Rascoff) |
| Kiemle & Hagood | 125.00 |
| Mr. Harsh | 125.00 |
| Mr. Quigley | 125.00 |
| Mr. Robideaux | 125.00 |
| G.M.P. Properties | 18,083.00 |

### MR. SCHUBACH

Mr. Schubach first seeks attorney fees under the lease provision. Mr. Pearson contends Mr. Schubach is not entitled to fees for two reasons:

1. Mr. Schubach was represented by Mr. Rascoff until his authorized withdrawal on May 24, 1985. No formal substitution of attorney form was filed by Mr. Supinger as required by CR 71(d). No fees were awarded Mr. Rascoff prior to his withdrawal.

2. Mr. Supinger's affidavit includes $1,395 for services by Mr. Rascoff and $1,125, a witness fee for the John T. Slavin

Company,[4] even though no cost bill was ever filed.

Paragraph 19 of the lease provides:

19. Court Costs and Fees. In the event of suit or action by Lessor to recover any rent due, recover possession of the premises or otherwise to enforce any of the covenants and agreements of this lease, Lessees shall pay [a] reasonable attorney's fee in addition to the costs allowed by law, together with all costs and expenses expended or incurred by Lessor in connection with such default or action.

By operation of RCW 4.84.330, this unilateral provision is applicable bilaterally.

■ Mr. Pearson does not offer any legal authority to support his contention the court's order of October 4, 1985, extinguished all future claims for attorney fees, nor does he offer any authority Mr. Supinger is not entitled to fees because of his failure to file a notice of substitution. Hence, those issues will not be considered on appeal. *Para–Medical Leasing, Inc. v. Hangen*, 48 Wn. App. 389, 398, 739 P.2d 717 (1987) (citing *Lessee v. Union Pac. R.R.*, 38 Wn. App. 802, 805 n.4, 690 P.2d 596 (1984), *review denied*, 105 Wn.2d 1018 (1985)).

Mr. Schubach offers no defense to Mr. Pearson's argument regarding the cost fee attributed to the John T. Slavin Company. RCW 4.84.090[5] provides that trial witnesses

---

[4]The actual amount attributed to Mr. Schubach was 20 percent of the $1,125 because Mr. Supinger was representing five defendants.

[5]RCW 4.84.090 provides:

"Cost bill—Witnesses to report attendance. The prevailing party, in addition to allowance for costs, as provided in RCW 4.84.080, shall also be allowed for all necessary disbursements, including the fees of officers allowed by law, the fees of witnesses, the necessary expenses of taking depositions, by commission or otherwise, and the compensation of referees. . . . The disbursements shall be stated in detail and verified by affidavit, and shall be served on the opposite party or his attorney, and filed with the clerk of the court, within ten days after the judgment: *Provided*, The clerk of the court shall keep a record of all witnesses in attendance upon any civil action, for whom fees are to be claimed, with the number of days in attendance and their mileage, and no fees or mileage for any witness shall be taxed in the cost bill unless they shall have reported their attendance at the close of each day's session to the clerk in attendance at such trial."

must report their attendance. Mr. Schubach does not point to any cost bill in the record. Additionally, it is presumed the cost was incurred as part of pretrial discovery, since there has been no trial on the merits. Such a cost is not allowed. *Arnesen v. Rowe,* 46 Wn.2d 718, 724, 284 P.2d 329 (1955); *Platts v. Arney,* 46 Wn.2d 122, 129, 278 P.2d 657 (1955).

■ Furthermore, the court failed to distinguish between the attorney fees incurred as a result of the contract action (specific performance of the right of first refusal) and those which were the result of the various tort claims by Mr. Pearson (unlawful interference with business relationship, conspiracy, etc.). As noted in *Travis v. Washington Horse Breeders Ass'n, Inc.,* 111 Wn.2d 396, 410, 759 P.2d 418 (1988), fees under the lease may be awarded only for those services which relate to the contract action; attorney fees are not awarded for tort actions. *State ex rel. Macri v. Bremerton,* 8 Wn.2d 93, 113–14, 111 P.2d 612 (1941); *Lincor Contractors, Ltd. v. Hyskell,* 39 Wn. App. 317, 324, 692 P.2d 903 (1984), *review denied,* 103 Wn.2d 1036 (1985). Thus the matter of fees awarded to Mr. Schubach should be remanded to determine the amount which relates only to the contract action, less the witness fee disallowed by this opinion.

### G.M.P. PROPERTIES

G.M.P. was awarded $18,083 under the terms of the lease.[6] Mr. Pearson claims that amount includes a fee for services rendered in another action, specifically $501.50. G.M.P. does not offer any defense to this assertion; thus, the amount must be stricken.

Additionally, Mr. Pearson contends any claim for attorney fees arising from the lease was extinguished when

---

[6]G.M.P. argues Mr. Pearson is not entitled to seek appellate review of its attorney fee award because his notice of appeal was not timely filed. However, Judge Donohue's order of February 23, 1987, was the final order entered with respect to G.M.P.'s attorney fees. Thus, the supplemental notice of appeal filed by Mr. Pearson on February 27, 1987, was timely.

G.M.P. was dismissed on summary judgment by the court's order of June 26, 1985. No appeal was taken from that order, nor has error been assigned to it. It is unclear from the order of February 23, 1987, on attorney fees, whether the court was relying on the lease provision for the award. G.M.P., in its appellate brief, argues it is entitled to those fees based on the lease.

However, any action on the lease was terminated June 26, 1985, with G.M.P.'s dismissal on summary judgment. The balance of its attorney fees incurred after that date was in defense of the various tort claims raised by Mr. Pearson subsequent to the dismissal. As previously noted, there is no legal basis on which to award attorney fees for defense of a tort action. We remand this issue to the trial court to determine the amount of attorney fees incurred by G.M.P. at the time of dismissal on June 26, 1985, less the $501.50 disallowed here. *Travis v. Washington Horse Breeders Ass'n, Inc., supra.* All fees incurred after that date will be the responsibility of G.M.P.

Kiemle & Hagood, Mr. Schubach, G.M.P., and Mr. Clausen seek attorney fees under RCW 4.84.185[7] and CR 11.[8] *Fluke Capital & Mgt. Servs. Co. v. Richmond*, 106 Wn.2d 614, 625, 724 P.2d 356 (1986) held that fees under this

---

[7]RCW 4.84.185 has since been amended, Laws of 1987, ch. 212, § 201, effective July 26, 1987, to read:

"Prevailing party to receive expenses for opposing frivolous action or defense. In any civil action, the court having jurisdiction may, upon written findings by the judge that the action, counterclaim, cross–claim, third party claim, or defense was frivolous and advanced without reasonable cause, require the nonprevailing party to pay the prevailing party the reasonable expenses, including fees of attorneys, incurred in opposing such action, counterclaim, cross–claim, third party claim, or defense. This determination shall be made upon motion by the prevailing party after an order of dismissal, order on summary judgment, or final judgment after trial or other final order terminating the action as to the prevailing party. In no event may such motion be filed more than thirty days after entry of the order. The judge shall consider the action, counterclaim, cross–claim, third party claim, or defense as a whole.

"The provisions of this section apply unless otherwise specifically provided by statute."

[8]CR 11 provides:

statute were not allowed for pretrial summary judgment dismissal. Therefore, fees requested by the parties under this statute must be denied.

## RAP 18.9

■ Mr. Clausen also requested an award of attorney fees pursuant to RAP 18, which he contends allows fees for a frivolous appeal. The standard for determining whether an appeal warrants sanctions is set forth in *Green River Comm'ty College Dist. 10 v. Higher Educ. Personnel Bd.*, 107 Wn.2d 427, 442–43, 730 P.2d 653 (1986):

> In determining whether an appeal is frivolous and was, therefore, brought for the purpose of delay, justifying the imposition of terms and compensatory damages, we are guided by the following considerations: (1) A civil appellant has a right to appeal under RAP 2.2; (2) all doubts as to whether the appeal is frivolous should be resolved in favor of the appellant; (3) the record should be considered as a whole; (4) an appeal that is affirmed simply because the arguments are rejected is not frivolous; (5) an appeal is frivolous if there are no debatable issues upon which reasonable minds might differ, and it is so totally devoid of merit that there was no reasonable possibility of reversal.
>
> *Streater v. White*, 26 Wn. App. 430, 434–35, 613 P.2d 187 (1980); *see also Millers Cas. Ins. Co. v. Briggs*, 100 Wn.2d 9, 15, 665 P.2d 887 (1983).

---

"Every pleading, motion, and legal memorandum of a party represented by an attorney shall be dated and signed by at least one attorney of record in his individual name, whose address shall be stated. . . . The signature of a party or of an attorney constitutes a certificate by him that he has read the pleading, motion, or legal memorandum; that to the best of his knowledge, information, and belief, formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation. . . . If a pleading, motion, or legal memorandum is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or legal memorandum, including a reasonable attorney fee."

*Boyles v. Department of Retirement Sys.,* 105 Wn.2d 499, 509, 716 P.2d 869 (1986) (Utter, J., concurring in part, dissenting in part).

Here, there were debatable issues, as evidenced by the Commissioner's order which denied respondents' motion on the merits.

CONCLUSION

Inasmuch as Mr. Pearson's other causes of action are based upon his right of first refusal, they need not be addressed. The summary judgment orders are affirmed; the cause is remanded for modification of the attorney fee award.

McINTURFF and STAUFFACHER, JJ. Pro Tem., concur.

Reconsideration denied November 30, 1988.

Review denied by Supreme Court February 28, 1989.