**Estate of Marion Mackay SCHMIDT, By and Through William Russell SCHMIDT, Personal Representative, Plaintiff and Respondent,**

v.

**Keith DOWNS and Albert E. Sanone, Defendants and Appellants.**

No. 870491–CA.

Court of Appeals of Utah.

May 24, 1989.

Robert A. Echard, Ogden, for defendants and appellants.

David S. Kunz, Ogden, for plaintiff and respondent.

Before BILLINGS, GARFF and GREENWOOD, JJ.

## OPINION

GREENWOOD, Judge:

Appellants, Keith Downs and Albert Sanone, challenge the trial court's ruling regarding a real estate purchase contract which Downs and Sanone entered into with Theodore G. and Marion M. Schmidt (the Schmidts). The trial court found that an interlineation in the contract was not agreed to or initialed by Marion M. Schmidt and that she, therefore, was not bound by the interlineated price. On appeal, appellants urge reversal, claiming that Marion Schmidt is bound by the interlineation and that appellants are entitled to purchase the property at the interlineated price. We agree and reverse.

On April 1, 1964, Downs and Sanone purchased approximately 130 acres from the Schmidts. Excluded from the sale was 1.62 acres containing the Schmidts' home, swimming pool and surrounding yard. The real estate contract stated:

> The [Schmidts] do hereby grant to [Downs and Sanone] an option to purchase the aforesaid home, garage, swimming pool, and surrounding yard, at such time as the [Schmidts] desire to sell the same *at whatever price the [Schmidts] determine to sell said property* at, it being the intent of this agreement that [Downs and Sanone] shall have the right of first refusal at such time that said property is sold by the [Schmidts]. In addition, [Downs and Sanone] shall have ninety (90) days within which to exercise the aforesaid options measured from the date on which the [Schmidts] give [Downs and Sanone] written notice that the aforesaid parcel of property is for sale.

(Emphasis added). Under the phrase "at whatever price the [Schmidts] determine to sell said property" is the typed interlineation "Sixty-one Thousand Two Hundred and Fifty ($61,250.00) DOLLARS."

Theodore Schmidt, Downs and Sanone all initialed the interlineation and signed the

contract. Marion Schmidt did not initial the interlineation but signed the contract. Theodore Schmidt died in 1983 and Marion Schmidt died in 1985. On March 13, 1986, William Schmidt (Schmidt), the personal representative of Marion Schmidt's estate, wrote a letter to Downs and Sanone indicating that the house and surrounding property had been appraised in the range of $145,000 to $150,000 and inquiring whether they would be interested in buying the property at a price within that range. Schmidt's attorney then wrote Downs and Sanone a letter dated April 30, 1986 stating that since they had not responded to Schmidt's letter, he assumed that they were not interested in the property and the property would be placed for sale on the open market. On May 7, 1986, Downs' and Sanone's attorney wrote Schmidt a letter stating they were exercising their option to purchase the home for $61,250. Schmidt filed this action seeking a declaratory judgment interpreting the contract.

The trial court found that Theodore Schmidt agreed to the interlineated price of $61,250 but Marion Schmidt did not agree to that price. Further, the court found that Marion Schmidt was a joint tenant in the property with Theodore and took his one-half interest after his death subject to the interlineated purchase price of $61,250. The court concluded that Downs and Sanone had a right of first refusal to purchase the 1.62 acres, subject to the provision that the purchase price of Theodore's one-half interest would be $30,625, and the remaining one-half of the purchase price would be one-half of the total purchase price offered and acceptable to plaintiff. The court also ordered each party to bear its own costs and attorney fees.

## I. INTERLINEATION

On appeal, Downs and Sanone claim that Marion Schmidt signed the contract after the interlineation was inserted on the contract and thus, agreed to all terms of the contract, including the interlineated price. Schmidt, however, asserts that since the trial court found that Marion Schmidt never assented to the interlineation, the court

implicitly found that Marion Schmidt signed the contract before the interlineated price was inserted.

### A. *Findings of Fact*

We first consider the trial court's findings and Schmidt's contention that the trial court implicitly found that Marion Schmidt signed the contract before the interlineation was added. We will not disturb the trial court's findings of fact unless they are clearly erroneous. Utah R.Civ.P. 52(a); *State v. Walker*, 743 P.2d 191, 193 (Utah 1987). Findings are not clearly erroneous unless they are against the weight of the evidence or the appellate court reaches a definite and firm conviction that a mistake has been made. *Id.* In this case, the trial court found that "[a]t the time the additional interlineated sentence was added, Mrs. Marion M. Schmidt was not present. There is evidence that Marion M. Schmidt came in later and signed the document; however, she did not initial the interlineation which was added to the document." Although the language of the finding is somewhat equivocal, an ambiguous finding or "judgment is subject to construction according to the rules that apply to all written contracts." *Lucky Seven Rodeo Corp. v. Clark*, 755 P.2d 750, 753 (Utah Ct.App. 1988). We, therefore, interpret the finding as stating that Marion Schmidt signed the contract after the interlineation was added.

The evidence presented at trial supports our interpretation of the court's finding. Downs, Sanone and their attorney, Robert V. Phillips, testified at trial. Their testimony established that Downs, Sanone, Theodore Schmidt, Phillips and Ray Kennedy, a bank officer, met at the Bank of Utah to review and sign the contract. Marion Schmidt arrived after the meeting was underway. Before anyone signed the contract, Phillips advised his clients to insert a purchase price. Pursuant to his advice, the interlineation was added. Subsequently, Downs, Sanone and Theodore Schmidt signed the contract. Marion Schmidt arrived after the three men had signed the contract. She reviewed and signed the contract after the interlineation was added.

No evidence was submitted which supports Schmidt's contention that Marion Schmidt signed the contract before the interlineation was added. We, therefore, conclude that the trial court correctly found that Marion Schmidt signed the contract after the interlineation was added.

### B. *Conclusions of Law*

■ We next examine whether the trial court erred in ruling that Marion Schmidt was not bound by the interlineated price. Preliminarily, we must determine whether that determination is a question of law or a question of fact. "A contract's interpretation may be either a question of law, determined by the words of the agreement, or a question of fact, determined by extrinsic evidence of intent." *Seashores Inc. v. Hancey,* 738 P.2d 645, 647 (Utah Ct.App. 1987) (quoting *Kimball v. Campbell,* 699 P.2d 714, 716 (Utah 1985)). If a contract is not integrated or is ambiguous and the trial court finds facts regarding the parties' intent based on extrinsic evidence, we will not disturb the findings unless they are clearly erroneous. *Id.; State v. Walker,* 743 P.2d at 193. However, "[q]uestions of contract interpretation not requiring resort to extrinsic evidence are matters of law, and on such questions we accord the trial court's interpretation no presumption of correctness." *Zions First Nat'l Bank v. National American Title Ins. Co.,* 749 P.2d 651, 653 (Utah 1988). Further, "[t]he labels attached to findings of fact or conclusions of law are not determinative." *Id.* at 656.

The trial court's factual findings state that Marion Schmidt did not agree to the interlineated price. The court then concluded that she was not bound by that interlineated price on her original one-half interest in the property. We, therefore, must determine if Marion Schmidt was bound by the interlineation as a matter of law because the contract contained the interlineation, regardless of whether she actually agreed to it. We review conclusions of law for correctness only. *Zions First Nat'l Bank,* 749 P.2d at 656. Parties to a contract are obligated to understand the terms of the contract before affixing their signatures to it and may not assert ignorance as a defense. *Resource Management Co. v. Weston Ranch and Livestock Co.,* 706 P.2d 1028, 1047 (Utah 1985). Generally, a person who has had an opportunity to read a contract, is not misled as to its contents and has no confidential relationship to the other party, cannot avoid the contract based on mistake, absent circumstances excusing his failure to read the contract. *Id.* Finally, "[b]efore an alteration will avoid an instrument it must materially alter the sense of the document and *be made after execution and delivery.*" *Leggroan v. Zion's Savings Bank & Trust Co.,* 120 Utah 93, 232 P.2d 746, 749 (1951) (emphasis added).

In this case, Marion Schmidt signed the contract after the interlineation was added. In addition, no evidence indicated that Marion Schmidt failed to read the contract before she signed it or was in any way prevented from reading it. To the contrary, Marion Schmidt's son and daughter-in-law testified that she was methodical and meticulous with regard to reading documents and always read the small print on everything. Therefore, because Marion Schmidt could have and probably did read the interlineated contract prior to signing it and signed the contract after the interlineation was added, we hold that she was bound by the interlineation, regardless of whether she subjectively agreed to the interlineated price.

### II. OPTION OR RIGHT OF FIRST REFUSAL

Downs and Sanone also claim that the trial court erred in concluding that the provision in the contract containing the price created a right of first refusal. Because the contract provision can be determined by the words of the agreement, without resort to extrinsic evidence of intent, we interpret it as a matter of law. *See Seashores,* 738 P.2d at 647.

■ A right of first refusal is a prerogative limiting the owner's right to freely dispose of his property by compelling him to offer it first to the party who has the first right to buy. *Northwest Television Club, Inc. v. Gross Seattle, Inc.,* 26 Wash.

App. 111, 612 P.2d 422, 425 (1980). In comparison, an option is

> a contract whereby the owner of the property, for valuable consideration, sells to the optionee the right to buy the property within the time, for the price, and upon the terms and conditions specified in the opinion....

*Spokane School Dist. No. 81 v. Parzybok,* 96 Wash.2d 95, 633 P.2d 1324, 1325 (1981); *see also Barnett v. Buchan Baking Co.,* 45 Wash.App. 152, 724 P.2d 1077, 1081 (1986); *Property Assistance Corp. v. Roberts,* 768 P.2d 976, 978 (Utah Ct.App.1989); *G.G.A., Inc. v. Leventis,* 773 P.2d 841, 845 (Ct.App. 1989). Further, an option is a unilateral obligation binding only on the optioner. *Cahoon v. Cahoon,* 641 P.2d 140, 143 (Utah 1982). The option becomes a bilateral contract, binding on both parties, if the optionee accepts the offer within the specified time period. *Madison v. Marlatt,* 619 P.2d 708, 715 (Wyo.1980); *see generally* 1A *Corbin on Contracts* § 264, 507–12 (1963).

■ In this case, the contract provided that Downs and Sanone agreed to purchase 130.071 acres from the Schmidts for $162,588.75. Excluded from the contract was the Schmidts' home, garage, swimming pool and surrounding yard. With regard to that excluded property, the contract provided that the Schmidts granted to Sanone and Downs:

> an option to purchase the aforesaid home, garage, swimming pool, and surrounding yard, at such time as the [Schmidts] desire to sell the same *at whatever price the [Schmidts] determine to sell said property* [Sixty One Thousand Two Hundred Fifty ($61,250.00) DOLLARS] at, it being the intent of this agreement that [Downs and Sanone] shall have the right of first refusal at such time that said property is sold by the [Schmidts].

The bracketed price in the above quote was added by interlineation. A contract should be interpreted so as to harmonize all of its terms and provisions, and all of its terms should be given effect if possible. *Beuhner Block Co. v. UWC Assocs.,* 752 P.2d 892, 895 (Utah 1988). By stating the price at which Downs and Sanone could purchase the property and agreeing to that price, the parties created an option rather than a right of first refusal. That is, the interlineation transformed the right of first refusal to an option by stating a price binding on the property owner. Under the contract, the option was triggered when Schmidt, as the successor in interest, decided to sell the property and communicated that decision to Downs and Sanone. We, therefore, conclude that Downs and Sanone had an option to purchase the property at $61,250.

## III. ATTORNEY FEES AND COSTS

■ The final issue is whether Downs and Sanone are entitled to attorney fees and costs incurred at trial and on appeal. Attorney fees are generally recoverable if provided for by statute or contract. *Cooper v. Deseret Fed. Sav. and Loan Ass'n,* 757 P.2d 483, 486 (Utah Ct.App.1988). Further, Utah R.Civ.P. 54(b) provides that costs shall be awarded to the prevailing party unless the court otherwise directs.

The contract in this case provided that the parties

> agree that should they default in any of the covenants or agreements contained herein, that the defaulting party shall pay all costs and expenses, including a reasonable attorney's fee, which may arise or accrue from enforcing this agreement....

Thus, under the express terms of the contract, Downs and Sanone are entitled to costs and a reasonable attorney fee incurred at trial and on appeal, to be determined by the trial court on remand, for enforcing the option clause in the contract.

Accordingly, we reverse the trial court's denial of costs and attorney fees at trial to Downs and Sanone, award them costs and attorney fees incurred on appeal, and remand to the trial court for a determination of reasonable attorney fees incurred at trial and on appeal.

Reversed and remanded.

BILLINGS and GARFF, JJ., concur.