[Nos. 21885-9-I; 23209-6-I. Division One. November 6, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. WOO WON CHOI, *Appellant.*

*In the Matter of the Personal Restraint of* WOO WON CHOI, *Petitioner.*

*Marc R. Lampson* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Dean Lum, Deputy,* for respondent.

PEKELIS, J.—Woo Won Choi was convicted in a bench trial of first degree assault. On appeal, he alleges that the trial court erred in (1) failing sufficiently to inform him of his right to an interpreter; (2) failing to insure that his jury waiver was knowing, voluntary and intelligent; and (3) finding sufficient evidence of the "intent to kill" element of first degree assault under the statute then in effect, RCW

9A.36.010.[1] Choi further claims that he was denied the effective assistance of counsel due to counsel's waiver of an interpreter, waiver of jury, and failure to raise a diminished capacity defense due to intoxication.

Choi also files a personal restraint petition which has been consolidated with this appeal. The issues raised are the same.[2]

# I

## FACTS ON APPEAL[3]

On the evening of September 5, 1987, Woo Won Choi, a Korean immigrant, was a customer at the Golden Nugget cardroom in Renton. During the course of the evening, he happened to sit at a table with John Lucena. At one point, the two had an altercation when Choi reached across Lucena's place at the table. Lucena believed Choi was trying to take some of his poker chips, but Choi claimed he was merely reaching for Lucena's cigarette lighter. Lucena pushed or slapped Choi's hand and angry words were exchanged briefly. Choi left the game at around 1:30 or 1:45 a.m., at least several minutes before Lucena.

Choi testified that as he was driving away from the Golden Nugget he saw Lucena make an obscene gesture to him as Lucena's car passed him. At that point Choi began following Lucena because Choi had plans to leave town the next day and wanted to talk to Lucena in order to

---

[1]RCW 9A.36.010 was replaced effective July 1, 1988, with RCW 9A.36.011, which does not contain the "intent to kill" language.

[2]Choi's petition and the briefs in his primary appeal allude to a number of other grounds on which trial counsel's representation was deficient. However, with regard to each of these, Choi has not properly supported his claims either with legal argument or with facts. See RAP 10.3(a)(5); RAP 16.7(a)(2). Thus, they will not be considered here. See State v. Brune, 45 Wn. App. 354, 363, 725 P.2d 454 (1986), review denied, 110 Wn.2d 1002 (1988); Pearson v. Schubach, 52 Wn. App. 716, 722, 763 P.2d 834 (1988), review denied, 112 Wn.2d 1008 (1989).

[3]Respondent properly argues that matters submitted as part of the personal restraint petition may not be considered part of the record on appeal. See RAP 9.1. Facts pertaining to the personal restraint petition are set forth in a subsequent section and analyzed separately.

"straighten up" with him before leaving. He had thoughts of forgetting the incident and turning his car away several times, but decided to continue following Lucena. At one point, Lucena stopped his car and Choi pulled up along side him on the left. Choi testified that he then rolled down his passenger window and thought he saw Lucena move to pull out a gun. Although he did not see a gun, he believed Lucena was going to shoot him. Choi ducked down, reached for his own gun which was under the seat of his car, and made "a couple wild shot[s]." Choi testified that he did not intend to kill Lucena.

Lucena then drove away, and Choi, who was unfamiliar with the neighborhood, continued to follow Lucena until he reached a major road. A few minutes later he pulled his car over to get out to urinate, heard the police coming, and lay down in the brush. He testified that at that point he was almost unconscious. He then heard a dog barking and climbed over a fence to escape. He was found by an officer of the K–9 unit and his dog inside a fenced gas metering station. Before the officers could get him out of the fenced area, Choi passed out.

Lucena's version of the event was somewhat different. He testified that after leaving the Golden Nugget he did not see Choi until shortly before he reached his home when he noticed that a car was following him closely. At that point, he pulled over to the right, and stopped his car. He looked to the left and saw Choi. Choi's passenger window was down. Lucena then saw Choi raise a gun and Lucena threw his arm up and "dove to the right." Two shots were fired, one of which passed through Lucena's arm. The other round damaged the left side of Lucena's car. He was able to pull his car away. Lucena said he did not make any motion toward Choi nor did he reach for anything before Choi fired at him.

Choi testified that at a family dinner earlier that evening he had a couple of beers to drink, and had a couple more after the family left. Employees of the Golden Nugget testified that he had two or three beers served to him there.

One employee gave her opinion that he did not appear to be intoxicated. Twice during his cross examination Choi testified that he was drunk on the evening in question.

Choi's counsel did not place the issue of whether Choi's intoxication had affected his ability to form an intent to kill before the fact finder. In counsel's presentence report, he stated that he investigated the intoxication issue and did not pursue it because the medical record did not support that theory.

Prior to trial, the court stated that it had notice of a possible language problem. The trial court questioned Choi's counsel regarding his client's English language ability, and counsel replied that he did not believe there was any difficulty. Mr. Murray Guterson, trial counsel for Choi, informed the court that

> [n]ot only is the defendant here, but his brother's here, who speaks English quite well, and in my many, many meetings with the defendant, I'm convinced that he'll understand questions put to him by both myself and Mr. Lum or by the Court.
>
> If anything develops that he's unable to understand the testimony of some witness and if I feel at all uncomfortable in explaining to him the thrust of what was said because of some question on his part, I think I could make arrangements to have someone come in, but I really think it's not necessary.

The court apparently accepted counsel's assurances that there was no need for an interpreter and addressed Choi directly concerning his proposed waiver of a jury trial. The court explained the differences between bench and jury trials and that Choi had a right to a jury trial. Choi answered "yes, sir" when asked if he understood his rights, if his counsel had explained them to him, and if it was his desire to waive his right to a jury trial. Choi then signed a written jury waiver.

The trial court found Choi guilty of first degree assault. Choi brings this timely appeal.

## II
### Waiver of Interpreter

Choi first argues that his Sixth Amendment rights to confront witnesses and to be present at trial were denied by

the trial court's failure to fully inform him of his right to an interpreter and to inquire directly of Choi whether he needed an interpreter.

Choi made no objection at trial on this issue. Thus, in order to determine whether the alleged error is reviewable, we must decide whether the trial court's actions, or inactions, constituted manifest error affecting a constitutional right. *See State v. Scott,* 110 Wn.2d 682, 688, 757 P.2d 492 (1988); RAP 2.5(a)(3).

■ The federal cases hold that the right to an interpreter affects a defendant's Sixth Amendment right of confrontation and the right inherent in a fair trial to be present at one's own trial. *See United States ex rel. Negron v. New York,* 434 F.2d 386, 389 (2d Cir. 1970). The right rests fundamentally on the notion that "no defendant should face the Kafkaesque spectre of an incomprehensible ritual which may terminate in punishment." *United States v. Carrion,* 488 F.2d 12, 14 (1st Cir. 1973), *cert. denied,* 416 U.S. 907, 40 L. Ed. 2d 112, 94 S. Ct. 1613 (1974). Since the right is of constitutional stature, we accept review.[4] *See Scott,* 110 Wn.2d at 688.

Initially, we must determine precisely the trial court's obligations. Choi argues that the court should have advised him that the waiver of a right to an interpreter is his decision to make, rather than counsel's or the court's, and that the court should also have explained to him the nature and effect of a waiver. *See United States v. Tapia,* 631 F.2d 1207, 1209 (5th Cir. 1980).

■■ The federal courts have held that whenever put on notice that there may be some significant language difficulty, the trial court should exercise its discretion to determine whether an interpreter is needed. *Carrion,* 488 F.2d at 14–15; *accord, State v. Korich,* 130 Wash. 243, 246, 226 P. 1016 (1924), *appeal dismissed,* 271 U.S. 690, 70 L. Ed.

---

[4]Washington also provides by statute that when an impaired person is a party to any legal proceeding the judge shall, in the absence of a written waiver, appoint a qualified interpreter. RCW 2.42.020.

1153, 46 S. Ct. 472 (1926); *State v. Trevino,* 10 Wn. App. 89, 94–95, 516 P.2d 779 (1973), *review denied,* 83 Wn.2d 1009 (1974) (both state cases pertaining to interpreters to assist witnesses). The court "should make unmistakably clear" to a defendant that he has a right to a court-appointed interpreter at trial *if the court determines that one is needed. Carrion,* 488 F.2d at 15; *Negron,* 434 F.2d at 390–91.

Thus, the requirement that the court advise the defendant directly about the waiver of a right to an interpreter does not come into play until the court has determined that an interpreter is necessary. If the defendant's language skills are adequate enough to understand the trial proceedings and to present his defense, he has no right to an interpreter and there is no issue relating to waiver.

The trial court inquired of Choi's counsel whether there was a language problem. Although it might have been prudent for the court to engage in a direct colloquy with Choi to determine the extent of his language ability, we do not find any authority which compels it to do so. Moreover, in reviewing the facts of *Carrion,* cited by Choi, we note that the court did not require a formal hearing on whether a translator was necessary. *See Carrion,* 488 F.2d at 15. In fact, the *Carrion* court emphasized that the trial court was to be accorded wide discretion in determining the need for an interpreter. *Carrion,* 488 F.2d at 14. Here, where Mr. Guterson advised the court that he had had "many, many meetings" with Choi, that he was confident that Choi could understand and answer questions, that Choi's brother was present to assist, and that counsel would advise the court if problems occurred, we find no error in the court's relying on counsel's representation in concluding that Choi did not need an interpreter.

■ Finally, even if the requirement to inquire of the defendant directly were placed on the court, its failure to do so here would be harmless beyond a reasonable doubt. *See Scott,* 110 Wn.2d at 687–88 (citing *Chapman v. California,* 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824, 24

A.L.R.3d 1065 (1967)). Constitutional error is presumed to be prejudicial, and the State bears the burden of proving the error harmless. *State v. Guloy,* 104 Wn.2d 412, 425, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986). A review of the record demonstrates that although Choi's English was not perfect, he was capable of making himself understood and seemed readily to comprehend questions put to him. Most importantly, he was able to clearly express his defense that he believed the victim was reaching for a gun, and that he shot wildly without intent to kill.

## III
### JURY WAIVER

Choi next asserts that due to his language difficulty it cannot be said that his jury waiver was knowing, voluntary, and intelligent. The State claims the waiver was valid, pointing to the extensive explanation of the effect of the waiver made by the trial court to Choi.

Every criminal defendant has a right under both the state and federal constitutions to a jury trial. *Pasco v. Mace,* 98 Wn.2d 87, 653 P.2d 618 (1982). A waiver of that right must be voluntary, knowing and intelligent. *Bellevue v. Acrey,* 103 Wn.2d 203, 207, 691 P.2d 957 (1984). The presumption should be made against waiver absent an adequate record to the contrary. *Seattle v. Williams,* 101 Wn.2d 445, 451, 680 P.2d 1051 (1984) (quoting *State v. Wicke,* 91 Wn.2d 638, 645, 591 P.2d 452 (1979)).

In examining the record, the appellate court will consider whether the defendant was informed of his or her constitutional right to a jury trial. *Williams,* 101 Wn.2d at 451. The court also examines the facts and circumstances generally, including the experience and capabilities of the accused. *State v. Downs,* 36 Wn. App. 143, 145, 672 P.2d 416 (1983), *review denied,* 100 Wn.2d 1040 (1984) (citing *Johnson v. Zerbst,* 304 U.S. 458, 464, 82 L. Ed. 1461, 58 S.

Ct. 1019, 146 A.L.R. 357 (1938) (waiver of right to counsel)). The existence of a written waiver is not determinative, but is strong evidence of the waiver's validity. *Downs,* 36 Wn. App. at 145. An attorney's representation that his client knowingly, intelligently and voluntarily relinquished his jury trial rights is also relevant. *Downs,* 36 Wn. App. at 146.

Choi relies on *United States v. David,* 511 F.2d 355 (D.C. Cir. 1975), involving a defendant whose mental competency to stand trial was at issue. In that case, the trial court engaged in a direct colloquy relating to waiver with the defendant, and although the defendant's answers to the court's questions were ambiguous, the trial court accepted the defendant's waiver. *See David,* 511 F.2d at 359, 361–62. On appeal, the court held that the defendant's ambiguous answers provided an insufficient basis for determining the validity of the waiver. *David,* 511 F.2d at 362.

Choi cannot be analogized to a defendant whose mental competency was questioned. As we have discussed above, our review of the whole record demonstrates that Choi's grasp of the English language was certainly adequate. The court, Choi, and his counsel discussed extensively the nature of a jury trial and the meaning of the word "waiver". During their colloquy, Choi answered questions and signed a written waiver, as required by CrR 6.1(a). As opposed to the situation in *David,* Choi's answers were unequivocal. Under these circumstances, we hold that the jury waiver was valid.

## IV
### INEFFECTIVE ASSISTANCE OF COUNSEL

Choi next claims that he was ineffectively represented by counsel because his counsel failed to raise a defense of diminished capacity due to intoxication.[5] The State replies

---

[5]Choi also raises ineffective assistance of counsel with regard to the interpreter and jury waiver issues. Since we have already ruled that there was no need for an interpreter and that his waiver of a jury was proper, we need only address the intoxication defense claim.

that Choi has demonstrated no prejudice due to the failure to raise the intoxication defense.

■ To prevail in an ineffective assistance of counsel claim, a defendant must show both that (1) counsel's performance was deficient, and (2) the deficient performance caused prejudice. The first prong requires a showing of errors so serious that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment. The second prong requires a showing that counsel's errors were so serious as to deprive the defendant of a trial whose result is reliable. *Strickland v. Washington*, 466 U.S. 668, 694, 80 L. Ed. 2d 674, 104 S. Ct. 2052, *reh'g denied*, 467 U.S. 1267, 82 L. Ed. 2d 864, 104 S. Ct. 3562 (1984); *State v. Jeffries*, 105 Wn.2d 398, 417–18, 717 P.2d 722, *cert. denied*, 479 U.S. 922, 93 L. Ed. 2d 301, 107 S. Ct. 328 (1986). Both prongs of the test need not be addressed if the ineffectiveness claim can be disposed on one prong. *State v. Fredrick*, 45 Wn. App. 916, 923, 729 P.2d 56 (1986).

■ Appellate courts are hesitant to find the assistance of counsel ineffective based solely on questionable trial tactics and strategies that fail to gain an acquittal. *In re Richardson*, 100 Wn.2d 669, 675, 675 P.2d 209 (1983); *see also State v. Adams*, 91 Wn.2d 86, 91–93, 586 P.2d 1168 (1978). Ineffective assistance may be found, however, if the tactics used would be considered incompetent by lawyers of ordinary training and skill in the criminal law. *See Adams*, 91 Wn.2d at 91.

Here, although there was evidence of some drinking, to suggest at trial that Choi was so out of control that he did not know what he was doing could certainly be considered ill advised. Such a theory would have been incompatible with Choi's very explicit and detailed recollection of the events. Moreover, he explained with specificity what his intent was, *i.e.*, to straighten things out with the victim, and later, to defend himself. This clearly belies his claim that he was too drunk to form *any* intent. The two defense theories appear to be mutually exclusive from a trial strategy point of view. Thus, in this case, the failure to raise an

intoxication defense cannot support a claim of ineffective assistance of counsel. *Cf. State v. Byrd,* 30 Wn. App. 794, 798–99, 638 P.2d 601 (1981) (intoxication defense inconsistent with consent defense).

## V
### INSUFFICIENT EVIDENCE

Finally, Choi argues that although the evidence might support a finding that he acted with knowledge, it cannot support a finding that he acted with an intent to kill. Thus, he asserts that the verdict is not sufficiently supported by proof beyond a reasonable doubt.

■ In order to determine the sufficiency of the evidence to support a verdict, this court must determine whether after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980).

■ Former RCW 9A.36.010 requires that in order to establish first degree assault, the intent to kill must be shown. A person acts with intent when he acts with the objective or purpose to accomplish a result constituting a crime. RCW 9A.08.010(a). Evidence of intent to kill is to be gathered from all of the circumstances of the case, including not only the manner and act of inflicting the wound, but also the nature of the prior relationship and any previous threats. *See State v. Mitchell,* 65 Wn.2d 373, 374, 397 P.2d 417 (1964). A person acts with knowledge when he is aware of or has information which would reasonably lead him to be aware of facts defining an offense. RCW 9A.08-.010(b).

Viewing this evidence most favorably to the State, there was testimony regarding a prior altercation, the testimony of Lucena that Choi shot at him without provocation through an open window, and the physical evidence which revealed a shot at close range that would have hit Lucena's

head if he had not ducked. From that evidence, the trier of fact could have found intent to kill beyond a reasonable doubt.

In sum, we affirm Choi's conviction of first degree assault.

## VI
### PERSONAL RESTRAINT PETITION

Additional facts were provided by way of affidavits and police reports appended to Choi's personal restraint petition. Those facts meriting discussion go to Choi's claim of ineffective assistance of counsel.

First, both Choi and his brother submit affidavits in which they state that they asked counsel at trial for an interpreter to be provided, and that counsel told them it was not necessary. Even if we were to assume, however, that counsel ignored such requests, Choi cannot prevail on an ineffective assistance of counsel claim since he has shown no prejudice. *See Strickland,* 466 U.S. at 694. As we have observed, the record reveals that evidence relating to Choi's two defense theories, that he was acting in self–defense and that he did not have an intent to kill, was presented and fully developed. We cannot see how counsel's failure to act on Choi's request for an interpreter prejudiced the presentation of his case.

Second, Choi submits a report showing a blood alcohol reading of .026 at 4:10 a.m. on the morning following the incident. This supports our conclusion that to forgo an intoxication defense was an appropriate tactical decision, and does not support an ineffective assistance of counsel claim.

 We therefore hold that in his personal restraint petition Choi has not met his burden of showing by a preponderance of the evidence actual prejudice arising from an error of constitutional magnitude. *See In re Richardson,* 100 Wn.2d 669, 674, 675 P.2d 209 (1983); *In re Hews,* 99

908

Wn.2d 80, 87–88, 660 P.2d 263 (1983). Accordingly, we dismiss the petition.

SWANSON and WEBSTER, JJ., concur.

Review denied at 114 Wn.2d 1002 (1990).