[No. 67200-8.   En Banc.]

Argued May 25, 1999.   Decided July 1, 1999.

THE STATE OF WASHINGTON, *Respondent*, v. JAIRO GONZALES-MORALES, *Petitioner.*

*Nielsen, Broman & Associates, P.L.L.C.*, by *James R. Dixon*, for petitioner.

*David S. McEachran, Prosecuting Attorney*, and *Laura D. Hayes, Deputy*, for respondent.

SMITH, J. — Petitioner Jairo Gonzales-Morales[1] seeks discretionary review of a decision of the Court of Appeals, Division One, affirming his conviction for two counts of second degree assault under RCW 9A.36.021(1)(c). The Court of Appeals concluded that Petitioner's constitutional right to counsel was not violated when the trial court used his court-appointed Spanish language interpreter to translate the testimony of a Spanish speaking witness for the State during Petitioner's trial.[2] This court granted review. We affirm.

---

[1]Although this case is captioned *State of Washington v. Jairo Gonzales-Morales*, Petitioner refers to himself as *Jairo Gonzales*. There is doubtless a cultural explanation for addition of "Morales" to his name. Report of Proceedings (Dec. 9, 1996) at 58, 64. Petitioner is a "legal permanent resident" foreign national. *Id.* at 5 (Jan. 9, 1997). His nationality is not indicated in the record, but he included in his petition a copy of an article on Mexican immigrants. *See* Pet. for Review, app. C. Petitioner was born May 24, 1977. Clerk's Papers at 9.

[2]The Court of Appeals also concluded there was no violation of the appearance of fairness doctrine. *State v. Gonzales-Morales*, 91 Wn. App. 420, 428-29, 958 P.2d 339 (1998). Petitioner did not appeal this ruling in his petition to this court. Pet. for Review at 1.

## QUESTION PRESENTED

The question presented in this case is whether a Spanish language defendant in a criminal case is denied the right to assistance of counsel under the Sixth Amendment of the United States Constitution when the trial court "borrows" the court-appointed Spanish language interpreter for the defendant to translate the testimony of a Spanish language witness for the State in the same case.

## ° STATEMENT OF FACTS

On September 18, 1996, while breaking into an automobile, Petitioner used a knife to attack two people who confronted him.[3] He cut one person on the stomach and stabbed the other in the arm.[4] On December 10, 1996, he was convicted by a jury in the Whatcom County Superior Court of two counts of second-degree assault under RCW 9A.36.021(1)(c).[5]

Because Petitioner's primary language is Spanish, a certified Spanish language interpreter was appointed for him at trial.[6] Four witnesses testified for the State, one of whom spoke only Spanish, thus requiring a Spanish language interpreter to translate the witness' testimony from Spanish into English.[7] A question arose as to whether the Petitioner's interpreter could be used to interpret for the State's witness.[8] The trial court, the Honorable Steven J. Mura, indicated he had "called the Offices [sic] for the Administrator of the Courts [OAC] with regard to the

---

[3]Clerk's Papers at 48.

[4]Report of Proceedings (Dec. 9, 1996) at 21-22, 38.

[5]Clerk's Papers at 3-4.

[6]Report of Proceedings (Dec. 9, 1996) at 2. The record indicates Petitioner has some limited ability to speak and understand English, but a certified Spanish language interpreter was required for the proceedings. *Id.* at 15.

[7]*Id.* at 2-3.

[8]*Id.*

interpreter issue,"[9] but had received no response.[10] The trial court stated if OAC was unable to find an interpreter "to assist the state here today," then he would use the interpreter appointed for Petitioner.[11] The trial court determined that same interpreter could be used to translate the testimony of the witness for the State while remaining seated at the defense table.[12] The trial court asked the interpreter whether this was restrictive.[13] The interpreter responded in the negative, but stated "I just think that if [Petitioner] wants to say something to [his counsel] it should be in private."[14] The trial court responded that if Petitioner wanted to ask counsel a question he could alert the court and testimony of the Spanish language witness would be interrupted in order for the interpreter to assist him.[15]

---

[9]*Id.* at 2. In 1985, a Court Interpreter Task Force was formed by the Washington Office for the Administrator for the Courts (OAC). ROSEANN DUEÑAS GONZÁLEZ ET AL., FUNDAMENTALS OF COURT INTERPRETATION: THEORY, POLICY AND PRACTICE 77 (1991). On April 17, 1989, the Legislature passed substitute Senate Bill 5474 titled "An Act Relating to Interpreters in Legal Proceedings," establishing a program for certification of courtroom interpreters. *Id.* Washington is one of eight states requiring certification for court interpreters by statute. Heather Pantoga, *Injustice in Any Language: The Need for Improved Standards Governing Courtroom Interpretation in Wisconsin*, 82 MARQ. L. REV. 601, 641 (1999). The program is administered by OAC. There are seven languages for which court interpreters can be certified in this State—Spanish, Russian, Vietnamese, Khmer (Cambodian), Cantonese, Laotian, and Korean. There are 235 certified court interpreters in the State. Office of Administrator for the Courts, OAC REPORTS at 2, July 6, 1998. In a January 1998 survey of 105 courts in this state, most courts reported a regular use of court interpreters. *Id.* In 1997, local jurisdictions spent over $2 million on courtroom interpreting. *Id.* Although some writers refer to the process as "interpretation," we prefer referring to it as "interpreting" or "translating."

[10]Report of Proceedings (Dec. 9, 1996) at 2. The trial court stated "[I]t's my unresearched opinion that the interpreter is an officer of the court and is not here as an agent for either side." *Id.* The Code of Conduct for Court Interpreters provides that "A language interpreter, like an officer of the court, shall maintain high standards of personal and professional conduct that promote public confidence in the administration of justice." General Rule (GR) 11.1(a).

[11]Report of Proceedings (Dec. 9, 1996) at 2. There is no other reference in the record concerning unavailability of an interpreter.

[12]*Id.*

[13]*Id.* at 3.

[14]*Id.*

[15]*Id.* at 3.

After all the evidence was in, counsel for Petitioner objected on the record to the use by the court of the interpreter appointed for Petitioner to translate the testimony of a witness for the State in the same proceeding.[16] The trial court noted that at no time during testimony did Petitioner avail himself of the opportunity to indicate he wanted to communicate with his counsel as earlier offered by the court.[17]

The jury returned a verdict of "guilty" on December 10, 1996.[18] On January 9, 1997, Petitioner was sentenced to confinement for 14 months and one year of community placement.[19]

On January 16, 1997, Petitioner filed a notice of appeal to the Court of Appeals, Division One.[20] On June 29, 1998, the Court of Appeals, the Honorable Walter E. Webster, Jr. writing, affirmed the trial court, concluding the use of Petitioner's interpreter to translate the testimony of a State witness did not violate either Petitioner's constitutional right to assistance of counsel or the appearance of fairness doctrine.[21]

Petitioner filed a petition with this court seeking review of the decision of the Court of Appeals. We granted review on February 2, 1999.

## DISCUSSION

The Sixth Amendment to the United States Constitution reads:

*In all criminal prosecutions, the accused shall enjoy the*

---

[16]*Id.* at 68.

[17]*Id.*

[18]Clerk's Papers at 3.

[19]*Id.* at 7. At the sentencing hearing Petitioner's counsel stated that as a result of the conviction Petitioner "would most likely . . . be automatically deported" and that he had "signed voluntary deportation paperwork for that." Report of Proceedings (Jan. 9, 1997) at 7.

[20]Clerk's Papers at 2.

[21]*Gonzales-Morales*, 91 Wn. App at 428-29.

*right* to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; *to be confronted with the witnesses against him*; to have compulsory process for obtaining witnesses in his favor, and *to have the assistance of counsel for his defense.*

(Emphasis added.)

█ In this state, the right of a defendant in a criminal case to have an interpreter is based upon the Sixth Amendment constitutional right to confront witnesses and "the right inherent in a fair trial to be present at one's own trial."[22] It is also the declared policy of this state under RCW 2.43.010

to secure the rights, constitutional or otherwise, of persons who, *because of a non-English speaking cultural background, are unable to readily understand or communicate in the English language, and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them.*[23]

Under RCW 2.43.050, an interpreter takes an oath

affirming that the interpreter will make a true interpretation to the person being examined of all the proceedings in a language which the person understands, and that the interpreter will repeat the statements of the person being examined to the court or agency conducting the proceedings, in the English language, to the best of the interpreter's skill and judgment.

Under RCW 2.43.080, "[a]ll language interpreters serving in a legal proceeding, whether or not certified or qualified, shall abide by a code of ethics established by supreme court rule."

---

[22]*State v. Woo Won Choi*, 55 Wn. App. 895, 901, 781 P.2d 505 (1989), *review denied*, 114 Wn.2d 1002 (1990). *See United States ex rel. Negron v. New York*, 434 F.2d 386, 389 (2d Cir. 1970).

[23]RCW 2.43.010 (emphasis added). *See also* RCW 2.42.010.

General Rule (GR) 11.1 recites the Code of Conduct for Court Interpreters. It reads:

**Preamble.** All language interpreters serving in a legal proceeding, whether certified or uncertified, shall abide by the following Code of Conduct:

A language interpreter who violates any of the provisions of this code is subject to a citation for contempt, disciplinary action or any other sanction that may be imposed by law. The purpose of this Code of Conduct is to establish and maintain high standards of conduct to preserve the integrity and independence of the adjudicative system.

(a) A language interpreter, like an officer of the court, shall maintain high standards of personal and professional conduct that promote public confidence in the administration of justice.

(b) A language interpreter shall interpret or translate the material thoroughly and precisely, adding or omitting nothing, and stating as nearly as possible what has been stated in the language of the speaker, giving consideration to variations in grammar and syntax for both languages involved. A language interpreter shall use the level of communication that best conveys the meaning of the source, and shall not interject the interpreter's personal moods or attitudes.

(c) When a language interpreter has any reservation about ability to satisfy an assignment competently, the interpreter shall immediately convey that reservation to the parties and to the court. If the communication mode or language of the non-English speaking person cannot be readily interpreted, the interpreter shall notify the appointing authority or the court.

(d) No language interpreter shall render services in any matter in which the interpreter is a potential witness, associate, friend, or relative of a contending party, unless a specific exception is allowed by the appointing authority for good cause noted on the record. Neither shall the interpreter serve in any matter in which the interpreter has an interest, financial or otherwise, in the outcome. Nor shall any language interpreter serve in a matter where the interpreter has participated in the choice of counsel.

(e) Except in the interpreter's official capacity, no language

interpreter shall discuss, report, or comment upon a matter in which the person serves as an interpreter. Interpreters shall not disclose any communication that is privileged by law without the written consent of the parties to the communication, or pursuant to court order.

(f) A language interpreter shall report immediately to the appointing authority in the proceeding any solicitation or effort by another to induce or encourage the interpreter to violate any law, any provision of the rules which may be approved by the courts for the practice of language interpreting, or any provisions of this Code of Conduct.

(g) Language interpreters shall not give legal advice and shall refrain from the unauthorized practice of law.

■■ Under RCW 2.43.030, when an interpreter is appointed, unless there is a written waiver by the non-English-speaking person, "a certified or qualified interpreter [is] to assist the person *throughout the [legal] proceedings*."[24] "The purpose of RCW 2.43 is to uphold the constitutional rights of non-English-speaking persons."[25]

The appointment of an interpreter is a matter within the discretion of the trial court "to be disturbed only upon a showing of abuse."[26] Under this standard of review, appellate courts have typically upheld trial court decisions concerning the use of interpreters.[27]

■■ Petitioner's case, however, raises an issue not

[24]RCW 2.43.030 (emphasis added).

[25]*State v. Aquino-Cervantes*, 88 Wn. App. 699, 706, 945 P.2d 767 (1997), *review denied*, 135 Wn.2d 1002, 959 P.2d 127 (1998).

[26]*State v. Trevino*, 10 Wn. App. 89, 94-95, 516 P.2d 779 (1973) (citing *State v. Korich*, 130 Wash. 243, 226 P. 1016 (1924)), *review denied*, 83 Wn.2d 1009 (1974).

[27]In *Woo Won Choi*, the court concluded the trial court did not err when it relied upon defense counsel's statement that the defendant did not need an interpreter. 55 Wn. App. at 902. While the court indicated it "might have been prudent" for the court to ask the defendant directly, it found no authority which compelled it to do so. In *State v. Mendez*, the court concluded that where the defendant had not requested an interpreter at a plea hearing, even though one was present, and the defendant responded to questions in one-word English answers, the trial court had no affirmative obligation to appoint an interpreter. 56 Wn. App. 458, 462-63, 784 P.2d 168, *review denied sub nom. State v. Sandoval*, 114 Wn.2d 1017, 791 P.2d 535 (1990). In *State v. Aquino-Cervantes*, the court con-

previously decided in this State involving an essentially mechanical aspect of the use of an interpreter instead of the more fundamental question of whether an interpreter is necessary.[28] The interpreter appointed by the court to translate for Petitioner was "borrowed" by the court to translate from Spanish into English the testimony of a witness for the State in Petitioner's criminal trial.[29] Petitioner contends this use of "his" interpreter prevented him from communicating with his attorney while the Spanish language witness was testifying.[30]

Although not binding on this court, there is persuasive discussion in federal cases regarding this issue and upon which the Court of Appeals relied. In a case frequently cited in "borrowing" cases, *United States v. Lim*,[31] the court stated "[a]s long as the defendant's ability to understand the proceedings and communicate with counsel is unimpaired, the appropriate use of interpreters in the courtroom is a matter within the discretion of the district court."[32] Under a "clearly erroneous" standard of review, the court concluded the "borrowing" of defendant's interpreter did not violate the federal Court Interpreters Act.[33]

---

cluded that, although interpreters were erroneously permitted to testify about their observations of the defendant during confidential attorney-client communications, the error was harmless. 88 Wn. App. 699, 709, 945 P.2d 767 (1997), *review denied*, 135 Wn.2d 1002, 959 P.2d 127 (1998).

[28]*See United States v. Mayans*, 17 F.3d 1174, 1179 (9th Cir. 1994).

[29]Report of Proceedings (Dec. 9, 1996) at 2.

[30]Interpreters play three different roles in criminal proceedings: (1) they make the questioning of a non-English speaking witness possible; (2) they facilitate the non-English speaking defendant's understanding of the colloquy between the attorneys, the witnesses, and the judge; and (3) they enable the non-English speaking defendant and the defendant's English-speaking attorney to communicate. Williamson B.C. Chang & Manuel U. Araujo, *Interpreters for the Defense: Due Process for the Non-English-Speaking Defendant*, 63 Cal. L. Rev. 801, 802 (1975). The authors refer to the first use of an interpreter as a "witness interpreter," to the second use as a "proceedings interpreter," and to the third use as a "defense interpreter." *Id.*

[31]794 F.2d 469 (9th Cir. 1986).

[32]*Id.* at 471.

[33]*Id. See* 28 U.S.C. § 1827(d)(1). *See also* RCW 2.42.010. The United States Congress passed the Court Interpreters Act in 1978. 28 U.S.C. §§ 1827-1828.

In *United States v. Joshi*,[34] the court noted that a defendant's Sixth Amendment rights were potentially implicated when a defense interpreter began to translate from the back of the courtroom by means of a radio headset and no interpreter was seated at the defense table.[35] When defense counsel expressed concern over whether counsel could then communicate with the defendant, the trial court "immediately appointed a second translator to effectuate communications between [defendant] and his attorney, while the first translator continued to interpret the trial proceedings."[36] However, the court stated "Even if the district court had not acted prudently by appointing a second translator, [defendant's] sixth amendment rights would not have been violated if the court had permitted brief recesses to allow client-attorney communication when requested."[37]

In *United States v. Bennett*[38] multiple defendants contended the appointment of one interpreter was not sufficient to allow individual communication with counsel.[39] The court emphasized that the trial court had provided "ample opportunity" to the defendants by offering to "recess the proceedings at any time they needed to consult their attorneys through the interpreter."[40] The use of the interpreter under these circumstances was a proper balance of appellant's " 'constitutional rights to confront and

---

Deirdre M. Smith, *Confronting Silence: The Constitution, Deaf Criminal Defendants, and the Right to Interpretation During Trial*, 46 Me. L. Rev. 87, 126 (1994). The act requires that non-English speaking persons be provided interpreters in civil and criminal cases in federal courts. Heather Pantago, *Injustice in Any Language: The Need for Improved Standard Governing Courtroom Interpretation in Wisconsin*, 82 Marq. L. Rev. 601, 629 (1999). The Administrative Office of the United States Courts maintains a list of certified and qualified interpreters. *Id*. at 628. The current languages for federal certification are Spanish, Haitian Creole, and Navajo. *Id*. at 629.

[34]896 F.2d 1303 (11th Cir. 1990).

[35]*Id*. at 1310-11.

[36]*Id*. at 1311.

[37]*Id*. at 1311 n.8.

[38]848 F.2d 1134 (11th Cir. 1988).

[39]*Id*. at 1140.

[40]*Id*. at 1141.

due process against the public's interest in the economical administration of criminal law.' "[41] The court also stated, "As a constitutional matter the appointment of interpreters is within the district court's discretion."[42]

In *United States ex rel. Navarro v. Johnson*[43] the court emphasized that, while borrowing defendant's interpreter to translate for Spanish-speaking witnesses potentially presented a problem, under the facts in that case the defendant's rights had not been violated. The court noted the Spanish-speaking defendant was able to follow the proceedings during the testimony of the Spanish-speaking witnesses.[44] The trial court had permitted, as in this case, the defendant to interrupt the proceedings to confer with counsel through the interpreter.[45] The appellate court noted that "for the most part, petitioner did not require it."[46]

In *Castellon v. Whitley*[47] the court concluded there had been no violation of the right to counsel when the trial court "borrowed" a court interpreter from the defense

---

[41]*Id.* (quoting *United States v. Martinez*, 616 F.2d 185, 188 (1980)). The court in *Martinez* stated: "The use of courtroom interpreters involves a balancing of the defendant's constitutional rights to confront and due process against the public's interest in the economical administration of criminal law." *Id.* Most federal circuits have employed this balancing test to interpret the federal Court Interpreters Act strictly, giving broad discretion to trial judges. Deirdre M. Smith, *Confronting Silence, supra.* In *Valladares v. United States*, 871 F.2d 1564, 1566 (11th Cir. 1989) the court concluded that use of an interpreter under the Act is committed to the "sound discretion" of the trial judge. The court stated, "The trial court must balance the defendant's rights to confront and effective assistance against the public's interest in the economical administration of criminal law, and the court's balancing is reversible only on a showing of abuse." In addition, the court noted that where "continuous translation may not have been provided, the reviewing court must determine 'whether the purposes of the Act were adequately met.' " *Id.* (citing *United States v. Lim*, 794 F.2d at 470). "The ultimate question is whether any inadequacy in the interpretation 'made the trial fundamentally unfair.' " *Id.* (citing *United States v. Tapia*, 631 F.2d 1207, 1291 (5th Cir. 1980)).

[42]848 F.2d at 1141.

[43]365 F. Supp. 676 (E.D. Pa. 1973).

[44]*Id.* at 683.

[45]*Id.*

[46]*Id.*

[47]739 F. Supp. 526 (D. Nev. 1990).

table to interpret for a state witness.[48] Relying on *United States v. Bennett*, the court emphasized the opportunity the trial court afforded the defendant to request a recess to consult with counsel through an interpreter.[49]

A few state courts have ruled on the issue raised by Petitioner in this case, and, with the exception of California, have tended to follow federal case law.[50] The Indiana Supreme Court concluded a defendant had not been deprived of the right to counsel when the trial court used the defendant's interpreter to translate "the brief testimony of the Spanish-speaking witness . . . ."[51] "Because [defendant] communicated with his counsel through the interpreter at times other than during trial, the translation arrangement did not deprive him of right to counsel."[52] In *People v. Marrero*,[53] the New York court noted the Spanish-speaking defendant was able to understand the testimony of the two Spanish-speaking witnesses without an interpreter.[54] Because the trial court had permitted defendant's interpreter to return to the defense table during the testimony of the two witnesses "to permit meaningful communication between defendant and his counsel,"[55] the court concluded defendant's right to counsel had not been violated.[56]

---

[48]*Id.* at 528.

[49]*Id.*

[50]The California Constitution, article I, section 14, states in pertinent part: "A person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." The California Supreme Court concluded this provision was violated when a trial court "borrowed" a defendant's interpreter to translate for a state witness, an arrangement in which defense counsel even acquiesced. *People v. Aquilar*, 35 Cal. 3d 785, 790, 677 P.2d 1198, 200 Cal. Rptr. 908 (1984). There is no provision in the Washington Constitution similar to California Constitution article I, section 14.

[51]*Martinez Chavez v. State*, 534 N.E.2d 731, 737 (Ind. 1989).

[52]*Id.*

[53]156 A.D.2d 141, 548 N.Y.S.2d 188 (1989), *appeal denied*, 75 N.Y.2d 921, 554 N.E.2d 77 (1990).

[54]*Id.* at 142.

[55]*Id.*

[56]*Id.*

In this case, there was no abuse of discretion by the trial court when it "borrowed" Petitioner's court-appointed interpreter to interpret for a witness for the State in the same case. The trial court offered Petitioner the option of interrupting the testimony to permit him to communicate with his counsel with the use of the interpreter. Petitioner did not exercise the option.[57] In addition, the interpreter remained at the defense table with Petitioner and his counsel while interpreting for the State witness.[58]

Petitioner in this case was Spanish-speaking and the witness was Spanish-speaking. Petitioner was able to understand the brief testimony as it was spoken by the witness and translated into English by the interpreter.[59] He could have motioned to his counsel to ask the trial court to interrupt the testimony to allow him to communicate with his counsel through the interpreter. During both direct and redirect examination of the Spanish-speaking witness, Petitioner's English-speaking counsel made no objection which, if made, would have required translation into Spanish for the benefit of Petitioner. Cross-examination by Petitioner's counsel consisted only of seven short questions which were translated from English into Spanish. The witness answered in Spanish and his answers were translated into English.[60] Under these circumstances, Petitioner's right to counsel was preserved and, consequently, there was no abuse of discretion by the trial court. There was no violation of Petitioner's Sixth Amendment right to counsel. The Court of Appeals was correct in affirming Petitioner's conviction for two counts of second-degree assault.

## SUMMARY AND CONCLUSIONS

The Court of Appeals affirmed the conviction of Petitioner

[57]Report of Proceedings (Dec. 9, 1996) at 3.

[58]*Id.*

[59]*See* Report of Proceedings (Dec. 9, 1996) at 54-58.

[60]*Id.* at 57.

Jairo Gonzales-Morales in the Whatcom County Superior Court for two counts of second-degree assault under RCW 9A.36.021(1)(c). The Court of Appeals concluded Petitioner's Sixth Amendment right to counsel had not been violated when the trial court used the Spanish language interpreter appointed for Petitioner by the court to interpret the testimony of a Spanish-speaking witness for the State during trial in the same case.

The court appointed a certified Spanish language interpreter for Petitioner Gonzales-Morales whose primary language is Spanish. The standard of review for appointment of an interpreter is abuse of discretion.

While this court has not previously ruled on the issue presented in this case, federal and state courts have employed the abuse of discretion standard of review in cases involving the "borrowing" by the trial court of an interpreter appointed by the court for a defendant to translate the testimony of a State witness at trial. Typically, courts have examined whether the trial court afforded the defendant an opportunity to interrupt the testimony of a foreign language witness to permit the defendant to communicate with counsel through the interpreter. Other factors considered by courts include the duration of testimony, the location of the interpreter in the courtroom, and whether the defendant could fully understand the testimony of non-English speaking witnesses. In addition, the availability of interpreters has been considered.

The language interpreter is an officer of the court and may be subject to assignment by the court to interpret for a witness for the State in the same criminal proceeding in which the interpreter is appointed for a defendant. In this state confidential communications between a defendant and defense counsel which are translated by a court-appointed interpreter are protected under the Code of Conduct for Court Interpreters.

In this case the trial court offered Petitioner the option of interrupting the testimony of the Spanish-speaking witness to allow Petitioner to communicate with his counsel

through the interpreter. The interpreter remained at the defense table throughout the testimony although that was only incidental to the process. Also, the Spanish-speaking Petitioner could understand the testimony of the Spanish-speaking witness. Petitioner consequently was able to fully understand every word spoken in the courtroom either through translation from English into Spanish or directly from Spanish (which was translated into English and understood by counsel).

Under the facts in this case, the trial court did not abuse its discretion when it used Petitioner's court-appointed certified Spanish language interpreter to translate for a Spanish speaking witness for the State in the same case. The Court of Appeals was correct in affirming the conviction.

We affirm the decision of the Court of Appeals affirming the Whatcom County Superior Court conviction of Petitioner Jairo Gonzales-Morales for two counts of second degree assault.

GUY, C.J., JOHNSON, ALEXANDER, TALMADGE, SANDERS, and IRELAND, JJ., and SWEENEY, J. Pro Tem., concur.

MADSEN, J., concurs in the result.

[No. 66271-1.   En Banc.]
Argued June 17, 1998.    Decided June 24, 1999.