94 P.3d 1004 (2004)
STATE of Washington, Respondent,
v.
Mebrat Worku TESHOME, Appellant.
No. 52092-0-I.
Court of Appeals of Washington, Division 1.
July 26, 2004.
*1005 Jennifer L. Dobson, Attorney at Law, Seattle, WA, for Appellant.
Erin H. Becker, King County Prosecutors Office, Seattle, WA, for Respondent.
BAKER, J.
Mebrat Teshome, accompanied by her attorney and an interpreter, entered a plea of guilty to third-degree assault  domestic violence. She later moved to withdraw her plea on the grounds that during the hearing the interpreter did not competently interpret, and thus she did not enter a valid plea. After the trial court denied her motion, she timely appealed. The interpreter's performance was less than competent, and the trial court did not follow proper procedures to ensure that the interpreter was qualified. But at the hearing on the motion to withdraw the guilty plea, the trial court found that Teshome spoke and read English at the level used in the plea hearing. Therefore Teshome has not proved that she suffered a manifest injustice. We affirm.

I
Mebrat Teshome pled guilty to an amended charge of assault in the third degree  domestic assault. At the plea hearing, she was accompanied by her attorney and an interpreter, Debassai Teclemaria. At the start of the hearing, the court learned from the interpreter that the language which is spoken by the defendant, Amharic, was not a language for which the state certified interpreters. The court then asked Teclemaria if he had interpreted in King County Superior Court in the past and if he had interpreted in criminal matters before. Teclemaria answered yes to both questions and the court swore him in.
*1006 The plea hearing proceeded with Teclemaria interpreting. The court confirmed that before the hearing, Teshome's attorney, with the assistance of the interpreter, had reviewed the plea form with Teshome. The court then asked a series of questions to confirm that Teshome was entering into the plea "freely and voluntarily with a full knowledge of the consequences." Also during the hearing, Teshome confirmed that she is able to read English.
Teshome pled guilty, but before sentencing, she moved to withdraw her plea. Because one of the issues upon which Teshome based her motion was the competency of the interpreter's performance during the plea hearing, the court allowed a second interpreter, Frehiwot Bruce, to interpret a recording of Teclemaria's Amharic back into English to create a bilingual transcript. Unfortunately, the quality of the recording of the plea hearing was poor, so the resulting bilingual transcript is not complete.
At the hearing to argue the motion to withdraw the guilty plea, Teshome testified that although she could function in English in daily life, at the time of the plea hearing she did not understand what was happening. But the trial court found her testimony not credible and did not consider it. And, because the court did not think the testimony was needed, the court refused to allow the State to present its only witness, the attorney who represented Teshome at the plea hearing. Instead, the court denied the motion based solely on the statement of defendant on plea of guilty and the bilingual transcript.

II
Although the majority of case law and secondary materials do not recognize a difference between interpreting and translating, we will respect the distinction. Interpreters interpret orally while translators translate written materials.[1]
This court reviews a trial court's denial of a motion to withdraw a guilty plea for an abuse of discretion.[2]
Teshome argues that she was denied her due process rights because of procedural defects in appointing her interpreter and because the interpreter was incompetent. In Washington, a defendant's right to an interpreter is based on "the Sixth Amendment constitutional right to confront witnesses and `the right inherent in a fair trial to be present at one's own trial.' "[3] The Legislature has also declared it is state policy" `to secure the rights, constitutional or otherwise, of persons who, because of a non-English speaking cultural background, are unable to readily understand or communicate in the English language, and who consequently cannot be fully protected in legal proceedings unless qualified interpreters are available to assist them.'"[4]
Teshome argues that she was denied her due process rights when the court failed to follow statutory procedures for appointing a non-certified interpreter. RCW 2.43.030(2) provides that when appointing a non-certified interpreter, "the appointing authority shall make a preliminary determination ... that the proposed interpreter is able to interpret accurately all communications to and from" the non-English speaking person in that particular proceeding.[5] RCW 2.43.030(2) further provides that:
The appointing authority shall satisfy itself on the record that the proposed interpreter:
(a) Is capable of communicating effectively with the court or agency and the person *1007 for whom the interpreter would interpret; and
(b) Has read, understands, and will abide by the code of ethics for language interpreters established by court rules.[[6]]
Upon learning that the proposed interpreter, Debessai Teclemaria, interpreted in a language that was not certified by the State of Washington, the court asked only two questions before swearing-in Teclemaria. The court asked if the interpreter had interpreted in King County Superior Court in the past and if he had interpreted on criminal matters. Teclemaria answered yes to both questions and the court proceeded to swear him in, evidently accepting Teclemaria as a qualified interpreter. The court did not inquire about Teclemaria's education in English or in Amharic. The court did not ask the defendant about her comfort with this interpreter. The court did not ask if Teclemaria was familiar with the code of ethics. Instead, the court made the assumption that because Teclemaria had interpreted in the past, he must be qualified.
But the statute does not merely require a qualified interpreter. RCW 2.43.030(2) requires the appointing authority to "satisfy itself on the record that the proposed interpreter..." is qualified.[7] The performance by Teclemaria during the plea hearing is a testimonial for why these procedures should be followed.
In Washington, a defendant's right to an interpreter means a right to a competent interpreter.[8] Teshome argues that a transcription of Teclemaria's interpreting proves his incompetence. Using RCW 2.43.030(2) as a guide, Teshome appears to be justified in raising questions about Teclemaria's competence. RCW 2.43.030(2) states that the appointing authority should determine that the proposed interpreter be able to interpret accurately all communications.
Although the State argues that Teclemaria performed his interpreting duties adequately, the transcript is replete with examples of interpreting by Teclemaria that is both inaccurate and incomplete. One of the most egregious examples is when the court asked the defendant, "You are now charged with Assault in the Third Degree  Domestic Violence. Do you understand the elements of that charge?" Teclemaria interpreted, "Do you understand that you are accused something from second degree to third degree? Do you understand that?" Not only did Teclemaria not interpret the court's question completely and accurately, he also added "second degree" to the question.
The State also argues that Teclemaria's interpreting, although flawed, was not sufficiently egregious to be considered incompetent under federal law. The State draws on federal law because Washington case law does not offer sufficient guidance on determining the competence of an interpreter. In Perez-Lastor v. Immigration and Naturalization Service,[9] the Ninth Circuit concluded the interpreting was incompetent because Perez-Lastor, who could not read, write, or speak English, had repeatedly stated he could barely understand the interpreter, on numerous occasions did not give responsive answers to questions, and, despite repeated restatement of questions, did not understand several of the inquiries.[10] And in Amadou v. Immigration and Naturalization Service,[11] the interpreter spoke a different dialect than Amadou and the interpreter repeatedly explained that he did not understand Amadou.[12]
The State is correct to describe the circumstances of these federal cases as egregious, but we do not accept the implication that an appellate court should find an interpreter's performance incompetent only when the interpreting was egregiously poor. Interpreters are provided to non-English speakers to secure their rights in legal proceedings.[13] *1008 Thus, the standard for competence should relate to whether the rights of non-English speakers are protected, rather than whether the interpreting is or is not egregiously poor.
The State does offer a four-part test to measure the competence of an interpreter's performance developed by the Seventh Circuit in United States v. Cirrincione:[14]
(1) what is told [the defendant] is incomprehensible; (2) the accuracy and scope of a translation at a hearing or trial is subject to grave doubt; (3) the nature of the proceeding is not explained to him in a manner designed to insure his full comprehension; or (4) a credible claim of incapacity to understand due to language difficulty is made and the district court fails to review the evidence and make appropriate findings of fact. [[15] ]
And the State argues that applying this four-part test to Teclemaria's interpreting reveals that he did a competent job. We disagree.
Specifically, we focus on the second factor in the test  accuracy. The transcript contains many examples of inaccurate interpreting in addition to the above-cited example regarding the elements of the charge. For example, when the court explained that "the State will recommend that you serve three months in custody, that you have a mental health evaluation by a state certified mental health provider, that you follow any treatment recommended including taking prescribed medications," Teclemaria does not mention anything about following treatment recommendations. Moreover, he does not mention prescribed medications. And he changes "state certified mental health provider" into a "doctor of their choice."
The Seventh Circuit is not the only circuit to include accuracy as a measure of competence. The Ninth Circuit in Perez-Lastor noted that "direct evidence of incorrectly translated words is persuasive evidence of ... incompetent [interpreting]."[16]
In addition to the evidence of incompetence found in the bilingual transcript, the testimony of the manager of the King County Superior Court Interpreter Services supports Teshome's assertion that Teclemaria did not perform competently. The manager apologized to the court for the poor job Teclemaria had done and explained that it would not happen again, implying that the interpreter would not work for the court again. Although the court explained that the manager's apology was premature, because the court had not yet concluded that the interpreting had been poorly done, the manager clearly thought Teclemaria's work with Teshome had been substandard.
Given the procedural failings and the evidence of Teclemaria's lack of competence, Teshome has a strong argument that her due process rights were violated. But unlike the defendants in Perez-Lastor and Amadou, Teshome is attempting to withdraw a guilty plea. Whereas interpreter incompetence was dispositive in those federal cases, it is merely a factor to be considered in the analysis of whether the court should have granted the motion to withdraw the guilty plea.
Teshome argues that because of the interpreters incompetence the State cannot meet its burden of showing that Teshome was aware of her rights at the time she entered the plea. But Teshome offers no authority to support her assertion that the State bears the burden of proof. Washington law is clear that a defendant moving to withdraw a guilty plea bears the burden of proving manifest injustice.[17]
A manifest injustice is "`an injustice that is obvious, directly observable, overt, not obscure.'"[18] Our Supreme Court has provided four nonexclusive indicia of a manifest injustice: "`(1) denial of effective *1009 counsel, (2) plea ... not ratified by the defendant or one authorized [by him] to do so, (3) plea was involuntary, (4) plea agreement was not kept by the prosecution.'"[19]
Teshome argues that because she was not provided a competent interpreter during her discussions with counsel and during the plea hearing, she could not understand the nature of crimes to which she pled guilty and the rights which she surrendered. Therefore she could not have entered a valid plea.
But Teshome does not present enough evidence to carry her burden of showing a manifest injustice. The parties submitted three pieces of evidence related to the motion to withdraw the guilty plea: Teshome's testimony, the statement of defendant on plea of guilty, and the bilingual transcript of the plea hearing.
The trial court in denying her motion concluded that Teshome's testimony was not credible. The court commented that the "defendant would say anything at this point to support her motion to withdraw her guilty plea." The court then stated that "the Court disregards defendant's testimony, and considers only [the statement of defendant on plea of guilty and the bilingual transcript of the plea hearing]" in reaching its decision on defendant's motion. Credibility determinations are within the province of the trier of fact and may not be reviewed on appeal.[20] Given this credibility determination and because nothing in the statement of defendant supports Teshome's motion to withdraw her plea, Teshome is left with only the bilingual transcript to prove manifest injustice.
Teshome argues that the transcript provides proof that she never understood the nature of the charges or her rights. She points out that when the court asked if she understood the elements of her charge, Teclemaria interpreted the question incorrectly, omitting the word "elements." In Perez-Lastor, the court stated that "an incorrect or incomplete translation is the functional equivalent of no translation...."[21] Teshome argues under Perez-Lastor, that because of the inaccurate interpreting, the court never actually asked the question.
But in Perez-Lastor[22] and Amadou,[23] the defendants relied completely upon their interpreters. The evidence on this record indicates that Teshome was not so reliant. In 1994, she tested at an eighth grade English comprehension level. She has lived in the United States since 1993, working and completing daily tasks, such as grocery shopping, speaking English. She completed a 911 call in English. The statement of defendant on plea of guilty also indicates that Teshome completed the 12th grade, but it does not indicate in what language she completed her schooling.
Although neither party has raised whether the appointment of an interpreter was truly necessary as an issue on appeal, the level of Teshome's English skills is significant: her ability to read, write, and speak English may have mitigated the impact of Teclemaria's incompetence.
Given her English skills, Teshome has not shown that she did not understand the plea she entered. Although the court's question about Teshome's understanding of the elements of the charge was not translated accurately, she fails to establish that she did not understand the question in English. Therefore, she has not shown that her answer, "yes," was not a knowing and intelligent response. Moreover, Teshome does not prove that she did not understand her attorney's explanation to her of the meaning of the statement of defendant on plea of guilty and the amended information.
Teshome offered additional evidence, in the form of her testimony at the motion hearing, but the trial court found that testimony not credible. Even if we were to consider *1010 that testimony, it might not be helpful to Teshome. During that testimony she claimed that she did not understand that one of her rights which she was giving up was her right to a speedy and public trial. But during the plea hearing, according to the bilingual transcript, this is one of the rights which Teclemaria interpreted correctly. When the plea court stated, "Paragraph five at the top of page two contains a number of Constitutional rights that you have, including your right to have a trial," Teclemaria interpreted, "Number five says do you understand you can have a jury trial?" Teshome responded, "Yes."
Although the evidence on the record is sufficient to sustain the trial court's finding that Teshome reads and speaks English, we would have preferred the trial court allow the State to present all its evidence, including the testimony of Teshome's former attorney. But given her English language skills and the trial court's determination of credibility, Teshome has not met her burden of proof to show manifest injustice.
AFFIRMED.
SCHINDLER, J., and ELLINGTON, A.C.J., concur.
NOTES
[1] Nina Ivanichvili, A Lawyer's Guide to Cross-Cultural Depositions, 32-JUL Colo. Law. 81, 81 (2003).
[2] State v. Jamison, 105 Wash.App. 572, 589-90, 20 P.3d 1010, rev. denied, 144 Wash.2d 1018, 32 P.3d 283 (2001).
[3] State v. Gonzales-Morales, 138 Wash.2d 374, 379, 979 P.2d 826 (1999) (quoting State v. Woo Won Choi, 55 Wash.App. 895, 901, 781 P.2d 505 (1989)).
[4] Gonzales-Morales, 138 Wash.2d at 379, 979 P.2d 826 (quoting RCW 2.43.010) (emphasis omitted).
[5] RCW 2.43.030(2).
[6] RCW 2.43.030(2).
[7] RCW 2.43.030(2) (emphasis added).
[8] State v. Pham, 75 Wash.App. 626, 633, 879 P.2d 321 (1994).
[9] 208 F.3d 773 (9th Cir.2000).
[10] Perez-Lastor, 208 F.3d at 776, 779, 780-81.
[11] 226 F.3d 724 (6th Cir.2000).
[12] Amadou, 226 F.3d at 725, 727.
[13] Gonzales-Morales, 138 Wash.2d at 379, 979 P.2d 826 (citing RCW 2.43.010).
[14] 780 F.2d 620 (7th Cir.1985).
[15] Cirrincione, 780 F.2d at 634.
[16] Perez-Lastor, 208 F.3d at 778.
[17] CrR 4.2(f); State v. Ross, 129 Wash.2d 279, 283, 916 P.2d 405 (1996).
[18] State v. Saas, 118 Wash.2d 37, 42, 820 P.2d 505 (1991) (quoting State v. Taylor, 83 Wash.2d 594, 596, 521 P.2d 699 (1974)).
[19] Saas, 118 Wash.2d at 42, 820 P.2d 505 (quoting Taylor, 83 Wash.2d at 597, 521 P.2d 699).
[20] State v. Camarillo, 115 Wash.2d 60, 71, 794 P.2d 850 (1990).
[21] Perez-Lastor, 208 F.3d at 778.
[22] Perez-Lastor, 208 F.3d at 776 (where Perez-Lastor did not speak, read, or write English).
[23] Amadou, 226 F.3d at 727-28 (where Amadou incorrectly answered questions based on interpreter's faulty interpreting, putting his credibility in jeopardy).