# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  56335-5-II |
| Respondent, | |
| v. | |
| RAY KENNETH SAUNDERS, | UNPUBLISHED OPINION |
| Appellant. | |

VELJACIC, J. — Ray Kenneth Saunders appeals his sentence for murder in the first degree, kidnapping in the first degree, and robbery in the first degree.  For the first time on appeal, Saunders argues the trial court violated his (1) right to be present in person, (2) right to confer with counsel, and (3) right to appear unrestrained at his resentencing hearing.  Saunders argues that he is entitled to resentencing because the State fails to demonstrate each of the errors were harmless beyond a reasonable doubt.

The State argues that we should decline to consider Saunders's claims because he fails to meet his burden of proof under RAP 2.5(a)(3) to warrant appellate review.

We hold that Saunders waived his right to be present in person claim by failing to object. We hold that Saunders fails to show an error of constitutional dimension with respect to his argument that his remote appearance from prison amounted to being restrained and decline to address the issue.  However, we hold that Saunders meets his burden to show a manifest constitutional error with respect to his right to counsel claim allowing him to raise the argument for the first time on appeal.  We also hold that the trial court erred in not providing an opportunity

for Saunders to confer with his attorney before the resentencing hearing. But, because the constitutional error was harmless beyond a reasonable doubt, we affirm Saunders's sentence.

FACTS

In 2001, a jury found Saunders guilty of murder in the first degree (count I), kidnapping in the first degree (count II), rape in the first degree (count III), and robbery in the first degree (count IV). The jury also found that Saunders used a deadly weapon during the commission of counts I through III. The trial court imposed an exceptional sentence above the standard range (822 months of confinement).

In 2002, Saunders appealed his convictions to this court. *See State v. Saunders*, 120 Wn. App. 800, 86 P.3d 232 (2004). We affirmed Saunders's convictions but remanded for the appointment of new counsel and resentencing because we concluded that Saunders's trial counsel provided ineffective assistance by failing to argue same criminal conduct as to the rape and kidnapping charges. *Id*. at 825-27.

In 2004, the trial court concluded the rape and the kidnapping charges were separate courses of criminal conduct. The court imposed a high-end, standard range sentence (651 months of confinement).

In February 2020, Saunders filed a pro se CrR 7.8 motion, arguing that he was entitled to resentencing based on the merger doctrine following the Supreme Court's decision in *State v. Muhammad*, 194 Wn.2d 577, 451 P.3d 1060 (2019). The trial court transferred the motion to this court for consideration as a personal restraint petition. The State filed a response conceding that the rape and murder convictions merged under *Muhammad* and that Saunders is entitled to a new sentence reflecting that merger, but it disagreed that the other convictions should also merge. We

transferred Saunders's petition to the Supreme Court because it was successive but potentially exempt from the statutory time bar on collateral review.[1]

In March 3, 2021, the Supreme Court granted Saunders's petition only as to the merger of the rape and felony murder convictions.[2] The court remanded for the trial court to vacate the rape conviction and for resentencing on the remaining convictions.

On August 9, Saunders sent a letter to the Supreme Court. He sent a copy of the letter to the Pierce County Superior Court, the Pierce County Prosecuting Attorney's Office, and the Pierce County Public Defender's Office. The letter read,

> Dear Chief Justice Gonzalez,
>
> This is a letter out of necessity. I am an 88 year old that is confined to a wheelchair and dying of cancer. Back on March 2, 2021, you entered an Order remanding me back to the Pierce County Superior Court to vacate one of my sentences and to resentence me on the rest. Absolutely nothing has happened, and I am being ignored without any help to get back and get this done. Please light a fire under whomever is ignoring your Order to get it done and [get] me back to be resentenced before I die. Thank you for your service and all you have accomplished so far straightening out stuff like this.

Clerk's Papers (CP) at 128.

On August 11, the Pierce County Prosecutor's Office e-mailed attorney Mary Kay High, the Chief Deputy for the Department of Assigned Counsel (DAC), to schedule Saunders's resentencing hearing. The State wrote, "Before I contact [the trial court] to schedule a hearing, I'm trying to figure out if this requires a physical transport from [Department of Corrections (DOC)] or if we can do on Zoom. The defendant is 88 and in a wheelchair and apparently has cancer according to his letter." CP at 196. High replied "I haven't figured out what the merger

---

[1] Order Transferring to the Supreme Court, *In re Pers. Restraint of Saunders*, No. 54890-9-II (Wash. Ct. App. Dec. 18, 2020).

[2] Order, *In re Pers. Restraint of Saunders*, No. 99335-1 (Wash. Mar. 3, 2021).

does to his . . . offender score, but I am in favor of a zoom hearing. Transport may be medically inadvisable and the jail probably lacks the staff or medical facilities for such an intense case. I say hold off on the transport." CP at 195. The State replied "OK—I will contact [the trial court] to see how they want to handle it." CP at 195.

On August 12, the State e-mailed the trial court's judicial assistant to schedule the resentencing hearing. The State included High in the e-mail communications with the court. The State wrote, "I've been tasked with getting a hearing set up for this defendant who is currently in DOC. The Supreme Court has filed a remand for re-sentencing. The defendant is in ill health apparently so I would request that this hearing be done via Zoom. Defense agrees." CP at 210. The judicial assistant replied that the hearing would be set for August 27 and that a Zoom invite to the required participants would be sent out. However, the judicial assistant advised that the State would need to forward the Zoom invite to DOC.

The State sent a virtual hearing request form for Saunders to the DOC. DOC acknowledged receipt of the request form.[3]

On August 18, the DAC entered a notice of appearance, appointing High as Saunders's counsel of record. The same day, the trial court issued a scheduling order requiring Saunders's presence in the courtroom for the resentencing hearing. The court did not indicate whether Saunders could appear remotely pursuant to CrR 3.4.

On August 27, the resentencing hearing occurred. Saunders attended remotely from DOC via Zoom. High also appeared remotely via Zoom, but from a different location. At the beginning of the hearing, the following exchange occurred:

---

[3] The virtual hearing request form is not part of the record.

MS. HIGH: Yes, Your Honor. And Mary Kay High, and I've been appointed to represent Mr. Saunders in the appellate remand for resentencing.

THE COURT: And are you ready to proceed this afternoon?

MS. HIGH: I am. I should let you know that Mr. Saunders had obtained this relief pro se. And I think we might want to inquire whether he actually wants me to represent him or he wants to go pro se.

THE COURT: Mr. Saunders, would you like to speak in regards to whether Ms. High represents you or you represent yourself?

MR. SAUNDERS: I want Ms. High to represent me.

Rep. of Proc. (RP) at 5. The court then heard the parties' positions about sentencing recommendations. On Saunders's behalf, High emphasized that any sentence imposed would be a life sentence. Specifically, High argued that "he's 88 years old. If this Court imposes a low-end sentence, he will die in prison, just as a high-end sentence will result in his death in prison." RP at 12. She also opined that he has had good behavior in prison, "has made payments towards his fines," and that according to the SRA the court should "take into account [] the impact on the individual." RP at 12.

Saunders addressed the trial court:

At this time I'd like to say that I'm still innocent. I didn't do it. I'm here paying for—my codefendant is the one who done everything. She come to my house. She stayed there two nights and brought this lady in that I—I had been drinking Everclear. I—I don't know nothing about any of that stuff. . . . The reason I didn't call the police department before was because I had three DWIs from Seattle, and that's why I moved to Tacoma. Then I jumped bail on the DWIs, and then this happened.

RP at 15-16.

During the hearing, there was no discussion regarding whether Saunders had consented to appear via video. Nor was there any clarification about whether Saunders and his attorney were able to communicate throughout the hearing.

5

The court imposed a high-end, standard range sentence of 504 months of total confinement.

After the court read Saunders his right to appeal, the following exchanged occurred:

> THE COURT: And you will receive a copy of these rights as part of the judgment and sentence packet as well.
> Ms. High or Mr. Saunders, would you like an opportunity to be in a breakout room to have a discussion about this or any other matters before we end this hearing?
> MS. HIGH: I'll defer to Mr. Saunders.
> MR. SAUNDERS: I would like to speak with you privately.
> MS. HIGH: Okay. We can do that. The breakout rooms will be confidential.
> MR. SAUNDERS: Okay.
> THE COURT: My judicial assistant will attempt to send you both into a breakout room.

RP at 24. The hearing adjourned shortly thereafter. Saunders appeals.

## ANALYSIS[4]

I.      RIGHT TO BE PRESENT

For the first time on appeal, Saunders argues that the trial court violated his right to appear in person at his resentencing hearing because the court failed to follow the procedures set forth in CrR 3.4(e)(2), which authorizes video conference hearings "only by agreement of the parties, either in writing or on the record, and upon the approval of the trial court judge pursuant to local court rule." We decline to address Saunders's claim.

A.      Legal Principles

As a general rule, we will not consider a claim of error raised for the first time on appeal unless the defendant shows it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 97-98, 217 P.3d 756 (2009). "'Manifest' in RAP 2.5(a)(3) requires

---

[4] Saunders argues that his right to presence and right to confer were violated, appearing to contend the issues are one in the same. But, "[t]he constitutional right to counsel is different than the right to presence." *State v. Anderson*, 19 Wn. App. 2d 556, 562, 497 P.3d 880 (2021), *review denied*, 199 Wn.2d 1004 (2022). Thus, we will address the issues separately.

a showing of actual prejudice." *State v. Kirkman*, 159 Wn.2d 918, 935, 155 P.3d 125 (2007). However, not all constitutional rights are subject to appellate review under RAP 2.5(a)(3). *See State v. Burns*, 193 Wn.2d 190, 210-11, 438 P.3d 1183 (2019); *State v. Anderson*, 19 Wn. App. 2d 556, 561-62, 497 P.3d 880 (2021), *review denied*, 199 Wn.2d 1004 (2022).

"Whether a defendant's constitutional right to be present has been violated is a question of law, subject to de novo review." *State v. Irby*, 170 Wn.2d 874, 880, 246 P.3d 796 (2011). "As a matter of due process, '[a] criminal defendant has a fundamental right to be present at all critical stages of a trial.'" *State v. Jones*, 185 Wn.2d 412, 426, 372 P.3d 755 (2016) (alteration in original) (quoting *Irby*, 170 Wn.2d at 880). This includes the "constitutional right to be present at sentencing, including resentencing." *State v. Ramos*, 171 Wn.2d 46, 48, 246 P.3d 811 (2011).

However, the right to be present at all critical stages of a criminal proceeding can be waived by failing to object, and therefore, not reviewable under RAP 2.5(a)(3). *Burns*, 193 Wn.2d at 211 (discussing cases which concluded that the right to be present may be waived by failure to object); *Jones*, 185 Wn.2d at 426-28 (holding that the defendant waived his right-to-presence challenge by failing to raise a timely objection); *Anderson*, 19 Wn. App. 2d at 561-62 (holding that "[t]o the extent the virtual hearing process implicated Mr. Anderson's right to be present [for his resentencing hearing], this issue has been waived."). "A trial court is not required to probe into the issue of whether the defendant is voluntarily waiving the right to presence if no objection is made." *Anderson*, 19 Wn. App. 2d at 561.

B.      Saunders Waived His Right-to-Presence Claim

As an initial matter, we note that both parties address RAP 2.5(a)(3) with respect to Saunders's right-to-presence claim. But as explained above, a right-to-presence claim is not subject to RAP 2.5(a)(3) and may be waived by a failure to object.

7

Here, neither Saunders nor his counsel objected to his remote appearance at the resentencing hearing. Saunders complains that the trial court made no record as to why he and his counsel appeared remotely. But "[a] trial court is not required to probe into the issue of whether the defendant is voluntarily waiving the right to presence if no objection is made." *Anderson*, 19 Wn. App. 2d at 561. Thus, even if the virtual hearing process implicated Saunders's right to be present, an issue we do not decide today, we hold that the issue has been waived because of his failure to object. Accordingly, we decline to address the merits of Saunders's right-to-presence claim.

II.    RIGHT TO COUNSEL

For the first time on appeal, Saunders also argues that he was deprived of his right to privately confer with counsel, which requires resentencing. The State argues that Saunders fails to meet his burden under RAP 2.5(a)(3) to permit appellate review because he fails to show a manifest error. We exercise our discretion to reach the merits.

A.    Legal Principles

Both the United States Constitution and the Washington Constitution guarantee criminal defendants the right to the assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art 1, § 22; *State v. Heddrick*, 166 Wn.2d 898, 909-10, 215 P.3d 201 (2009). The constitutional right to counsel requires that defendants be able to confer privately with their attorneys at all critical stages of the proceedings, including resentencing. *Anderson*, 19 Wn. App. 2d at 562. "The ability for attorneys and clients to consult privately need not be seamless, but it must be meaningful." *Id*. The inquiry into whether there was a violation of a defendant's constitutional right to privately confer with counsel is fact-specific. *See State v. Gonzales-Morales*, 138 Wn.2d 374, 386, 979 P.2d 826 (1999); *Anderson*, 19 Wn. App. 2d at 563.

The "deprivation of the right to counsel is a fundamental constitutional claim that can be raised for the first time on appeal, so long as the claim is manifest, as required by RAP 2.5(a)(3)." *Anderson*, 19 Wn. App. 2d at 562. As explained above, "'Manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." *Kirkman*, 159 Wn.2d at 935. "[T]he focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review." *O'Hara*, 167 Wn.2d at 99-100.

"[A] harmless error analysis occurs after the court determines the error is a manifest constitutional error."[5] *Id.* at 99. Here, the State does not dispute that the constitutional harmless error test applies. "Under this test, prejudice is presumed and the State bears the burden of proving harmlessness beyond a reasonable doubt." *Anderson*, 19 Wn. App. 2d at 564.

B.     *State v. Gonzales-Morales* and *State v. Anderson*

In *Gonzales-Morales*, our Supreme Court considered whether a defendant's constitutional right to privately confer with counsel had been violated. 138 Wn.2d at 386. The defendant's primary language was Spanish, and a certified Spanish language interpreter was appointed for him at trial. *Id*. at 376. One of the State's witnesses spoke only Spanish, and the trial court allowed the State to borrow the defendant's interpreter during that witness's testimony. *Id*. at 376-77. The interpreter sat at the defense table during the State witness's testimony. *Id*. at 377. The trial court stated that, if the defendant wanted to speak with his attorney, he could alert the court, and the proceedings would be interrupted so the interpreter could assist him. *Id*. Our Supreme Court considered whether the trial court had violated the defendant's right to counsel. *Id*. at 386. Our

---

[5] Deprivation of counsel in a criminal case constitutes a structural error. *In re Pers. Restraint of Khan*, 184 Wn.2d 679, 691, 363 P.3d 577 (2015). In contrast, interference with right to counsel (by, for example, not providing defendant a forum to confer privately with his attorney) is subject to a harmless error analysis. *See* RAP 2.5(a)(3); *Anderson*, 19 Wn. App. at 562; *O'Hara*, 167 Wn.2d at 99-100.

Supreme Court noted that the defendant "could have motioned to his counsel to ask the trial court to interrupt the testimony to allow him to communicate with his counsel through the interpreter" and determined that the defendant's right to counsel was not violated. *Id.*

In *Anderson*, Division Three of this court considered whether a set of procedures violated the defendant's right to confer privately with counsel to the point that it was a manifest error allowing the defendant to raise the argument for the first time on appeal. 19 Wn. App. 2d at 562-64. There, the defendant attended a resentencing hearing via video while his attorney attended telephonically. *Id.* at 560. There was no discussion during the hearing regarding the defendant's ability to communicate with his attorney. *Id.* On appeal, the court compared the situation to *Gonzales-Morales* and emphasized two differences. *Id.* at 563. First, unlike in *Gonzales-Morales*, the trial court did not set ground rules for how the defendant could communicate confidentially with his attorney during the hearing. *Id.* Second, the defendant and attorney were not "physically located in the same room, where they might have been able to at least engage in nonverbal communication." *Id.* The court also noted that "[i]t is unrealistic to expect [the defendant] to assume he had permission to interrupt the judge and court proceedings if he wished to speak with his attorney." *Id.* Division Three concluded that, based on these facts, the defendant met his burden of showing a manifest constitutional error allowing him to raise the argument for the first time on appeal. *Id.* at 563-64. However, Division Three held that the State had met its burden of proving harmless error because Anderson received all the forms of relief that were requested at his resentencing hearing. *Id.* at 564.

C.      Saunders Meets His Burden of Proof Under RAP 2.5(a)(3)

Saunders likens his case to the facts of *Anderson*, 19 Wn. App. 2d 556, arguing that he has demonstrated a manifest error affecting a constitutional right to permit appellate review. We agree.

Here, *Anderson* is on point. Like *Anderson* and unlike *Gonzales-Morales*, the trial court never set any ground rules for how Saunders and his attorney could confidentially communicate during the remote hearing. Nor were Saunders and his attorney physically located in the same room, where they might have been able to at least engage in nonverbal communication. Given that Saunders and his attorney appeared remotely from separate locations, it is not apparent how private attorney-client communication could have taken place during the hearing. Additionally, like *Anderson*, it is unrealistic to expect Saunders to assume he had permission to interrupt the judge and court proceedings if he wished to speak with his attorney. Furthermore, we note that Saunders did not request the assistance of counsel until the day of the resentencing hearing. Thus, while Saunders's counsel advised him that a confidential breakout room was available, the record supports his contention that he did not know of this fact until the close of the hearing.

The State argues that Saunders fails to show manifest error because the record demonstrates that the trial court offered him the option of conferring with his attorney in a Zoom breakout room and that he exercised that option. We disagree.

Here, the record shows that the court did not notify Saunders of the breakout room until *after* the sentence had been imposed. And as explained above, the salient fact here is that the court never set any ground rules for confidential communication during the hearing and prior to imposing his sentence. Additionally, given the circumstances, Saunders was not able to at least engage in nonverbal communication with his attorney. Thus, while Saunders eventually conferred with his attorney, he did not have a meaningful ability to consult with his attorney *before or during*

his resentencing hearing. Because this constitutional error is manifest (one that is obvious from the record), we conclude that the State's argument fails.

We conclude that Saunders met his burden to show a constitutional error that is manifest, or obvious from the record. Accordingly, Saunders's the lack of error preservation is not a hurdle to relief under RAP 2.5(a)(3).

D.      The Error was Harmless Beyond a Reasonable Doubt

Next, we consider whether the constitutional error was harmless. *O'Hara*, 167 Wn.2d at 99. "Under this test, prejudice is presumed and the State bears the burden of proving harmlessness beyond a reasonable doubt." *Anderson*, 19 Wn. App. 2d at 564.

Saunders argues that the constitutional error is not harmless beyond a reasonable doubt because, unlike *Anderson*, he did not receive all the relief he requested at his resentencing. He contends that if he had meaningful communication with his counsel, then he could have raised issues to argue for some leniency in connection with his sentence. We disagree with Saunders.

The error was harmless here because Saunders's attorney made every argument reasonably available: that he was elderly, in ill health due to cancer, that he required use of a wheelchair, and that he undertook rehabilitative activities while in prison. Further, Saunders's counsel argued to the court that Saunders was not centrally involved in the crimes. Finally, Saunders identifies no arguments that should have been made by his lawyer but that were not, such that we could say that the failure to confer with counsel in advance of the hearing would have resulted in Saunders receiving a different sentence. We hold that any error in not allowing Saunders to confer with his attorney was harmless beyond a reasonable doubt.

III.     UNCONSTITUTIONAL RESTRAINT

Saunders argues that *State v. Jackson*, 195 Wn.2d 841, 467 P.3d 97 (2020), prohibits any videoconferencing from prison because it amounts to an unconstitutional restraint requiring an individualized inquiry into its need. We disagree.

A criminal defendant is entitled to a fair trial under the Sixth and Fourteenth Amendments to the United States Constitution and article I, section 22 of the Washington State Constitution. *Id.* at 852. To ensure the right to a fair trial, "'[i]t is well settled that a defendant in a criminal case is entitled to appear at trial free from all bonds or shackles except in extraordinary circumstances.'" *Id.* (quoting *State v. Finch*, 137 Wn.2d 792, 842, 975 P.2d 967 (1999) (plurality opinion)).

In *Jackson*, our Supreme Court held that shackling the defendant in his pretrial hearings without an individualized determination that shackles were necessary violated his constitutional rights and that the error was not harmless. *Id.* at 845. The court's analysis focused on the history of shackles and restraints as a means of control and oppression in American history. *Id.* at 850-51.

Here, nothing in the record indicates that Saunders was shackled while appearing on video. We decline to read *Jackson* for the broad proposition that any videoconference appearance from prison violates a defendant's constitutional rights. Because Saunders fails to demonstrate an error, we decline to grant him relief on this basis.

CONCLUSION

We affirm Saunders's sentence.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Lee, J.

Cruser, A.C.J.